ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Recardo Weatherspoon,                )
       Petitioner,                        )
                       )

v.                                   )          Civ Act. No. 07-495-***

                       )

Thomas Carroll                       )
And Attorney General of              )
State of Delaware,                   )
       Respondents.                      )

```
        F I L E D

     DEC  1 7  2007

    U.S. DISTRICT COURT
   DISTRICT OF DELAWARE
```

## PETITIONER'S TRAVERSE IN SUPPORT OF HIS FORM FEDERAL HABEAS CORPUS FILED ON 8/8/07

### I. INTRODUCTION

Petitioner, Recardo Weatherspoon, is incarcerated at the Delaware Correctional Center located in Smyrna, Delaware. In June 2000, the petitioner, plead guilty to one count of delivery and two counts of second degree conspiracy. He was declared a habitual offender and was sentenced to 17 years in prison, suspended after 13 years for four years of probation. Petitioner didn't appeal his conviction or sentence. Weatherspoon claims that he is not "lawfully" in custody because of the violations of his rights under the United States Constitution that are alleged in the petition for federal habeas corpus relief filed pursuant to 28 U.S.C. §2254 and herein. Except as expressly admitted herein, Petitioner denies each and every allegation of the state's Answer and re-affirms that his confinement is in violation of the constitution.

## II. PROCEDURAL BACKGROUND

In August 2002, petitioner applied for his first motion for postconviction relief

under Superior Court Criminal Rule 61, which was denied in October 2002. He

raised ineffective assistance of counsel and several other claims. The Superior court

considered petitioner's claims and denied his motion on its merits. He filed a timely

appeal to the Delaware Supreme Court and the Supreme Court affirmed the

Superior Courts decision. See Weatherspoon v. State, 2003 WL 723992 (Del. Supr.)

In December 2006 petitioner filed his second motion for postconviction relief. He

complained that the prosecution did not establish that he was eligible for sentencing

as a habitual offender. He blames counsel ineffectiveness for not presenting this

claim to the court. Petitioner's motion was denied by decision dated January 26,

2007. State v. Weatherspoon, 2007 WL 441945 (Del. Super. Ct.) He appealed to the

Delaware Supreme Court and the court affirmed the Superior Court's decision on

July 20, 2007.

## III. DISCUSSION

The claims raised in the petitioner's first and second postconviction relief motions

are the basis of his federal habeas corpus. In his petition for federal habeas relief,

petitioner raised the following grounds for relief:

> (1) Ineffective Assistance of Counsel, (2) Prosecutorial Misconduct,
> (3) Abuse of Discretion, and (4) Prosecution did not establish that the
> petitioner was eligible for sentencing as a habitual offender.

Petitioner's claims are meritorious.

2

A. EXHAUSTION

Ground (1), (Claims 1-5), and Grounds 2-4 are exhausted. Petitioner

exhausted remedies available in the State Courts. 28 U.S.C. §2254(b);

Alston v. Redman, 34 F.3d 1237, 1241-42 (3rd Cir. 1994). The above

entitled claims raised in the states courts the legal and factual basis of the

claims which he presents to the federal habeas courts. See 28 §2254(b);

Duncan v. Henry, 513 U.S. 364, 365 (1995). Petitioner has met the burden

of establishing that the exhaustion requirement has been satisfied. More so,

the state courts were put on notice that petitioner was asserting claims

predicated on federal law. See McCandless v. Vaughn, 172 F.3d 255, 260

(3d Cir. 1999); Johnson v.Carroll, 250 F.Supp.2d 395, 400(D. Del 2003),

rev'd on other grounds, 369 F.3d 253 (3d Cir. 2004). Further, the

petitioner's state court pleadings and briefs demonstrated that he presented

the legal theory and supporting facts in his federal habeas petition. Doctor v.

Walters, 96 F.3d 675, 678 (3d Cir.1996) see exhibits A and B.

B. ONE-YEAR STATUTE OF LIMITATION

The AEDPA prescribes a one year period limitations for the filing of the

habeas petition by state prisoners. 28 §2244(d)(1). Petitioner does not allege

any facts triggering the application of §2244(d)(1)(B),(C), or (D). As such

the one-year period of limitation begin to run when Whetherspoon's

conviction became final under §2244(d)(1)(A). The Delaware Superior

Court Sentenced petitioner on June 14, 2000, and petitioner never appealed

this sentence. Consequently, petitioner's conviction became final for the

purpose of 28 §2244(d)(1) on July 14, 2000. See 10 Del. Code Ann. §147; Del.
Supr. Ct 6(a)(ii). Thus, to timely file a habeas petition with this court, petitioner
needed to file his §2254 petition no later than July 14, 2001. With July 14 2001 as
the filling date, petitioner admits he filed his petition more than six years too late.
As such, his habeas petition is time-barred, unless the time period can be
equitably tolled.

## C. EQUITABLE TOLLING

A court in its discretion may equitably toll the one-year filing period when "the
petitioner has in some extraordinary way ... been prevented from asserting his
rights." Miller v. New Jersey State Dep't of Corrs. 145 F.3d 616 (3d Cir. 1998)
(internal citations omitted). In general, federal courts invoke the doctrine of
equitable tolling "only sparingly." See United States v. Midgley, 142 F.3d 174,
179 (3d. Cir 1998). Petitioner asserts that the statute of limitations should be
tolled because he was in an extraordinary way prevented from asserting his rights.
The extraordinary way that he was prevented from asserting his rights is because
of his attorney's ineffectiveness. His attorney gave him no advice at all about
filing a direct appeal to the Delaware Supreme Court and his attorney gave him no
advice at all about the AEDPA statute of limitations. Advice about the
AEDPA's statute of limitations time requirement is so fundamental and so
intimately linked to the trial and postconviction proceedings, that failure to
advise petitioner at all about his right to appeal and about the AEDPA Statute
of limitations, amounts to ineffective assistance of counsel, which is covered
by the Sixth Amendment. Counsel knew that petitioner was not satisfied with

4

counsel's representation. Counsel purposely refused to give petitioner any advice on the AEDPA time requirement or petitioner's right to file a direct appeal to prevent petitioner from raising ineffective assistance of counsel claims against defense counsel before the court. Petitioner has a eighth grade education and relied on the legal advice of counsel. Petitioner also relied on prison paralegals. If counsel had wrote a simple letter to explain petitioner's legal options and to explain that counsel would be withdrawing as attorney of record, petitioner would have accepted and followed counsel's legal advice; therefore, complying with procedural requirements of the law. The doctrine of equitable tolling should be available to petitioner on the facts he has presented, and therefore, his §2254 petition should not be dismissed as untimely.

## IV.  STANDARD OF REVIEW

Pursuant to the provisions of the AEDPA, the "unreasonable application" standard of review is applicable to petitioner's claim of ineffectiveness of counsel. Petitioner alleges that, applying this standard, the state court decision denying him postconviction relief constitutes an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984) as interpreted by the U.S. Supreme Court. Further, petitioner alleges that the State court decision is based on an unreasonable determination of the facts that is rebutted by clear and convincing evidence in the record.

5

## V.  INCORPORATED BY REFERENCE

Petitioner incorporates by reference the form petitioner for federal habeas

corpus relief filed on August 8, 2007, and Petitioner's first and second

postconviction relief motions (Exhibits A and B), including the Supporting

Exhibits, which are being submit contemporaneously in support of Traverse.

## VI.  PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth in the petition for federal habeas

corpus and in the documents incorporated by reference, which are petitioner's

previous points and authorities previously filed, such as petitioner's first and

second postconviction motions, petitioner respectfully request that the court:

(1) Grant the federal habeas corpus, reverse petitioner's conviction, and order

a new trial.

Dated:  11/30/07

_____
Recardo Weatherspoon
Pro se
DCC
Smyrna DE 19977

## Certificate of Service

I, _Recardo Weatherspoon_, hereby certify that I have served a true

and correct cop(ies) of the attached: _Traverse In Support Of His Form_

_Federal Habeas Corpus Filed on 8/8/07_ upon the following

parties/person (s):


TO: _Kevin M. Carroll_                TO: _____

_Deputy Attorney General_             _____

_Department of Justices_              _____

_820 N. French St._                  _____

_Wilmington, DE 19801_               _____


TO: _____                       TO: _____

_____                           _____

_____                           _____

_____                           _____

_____                           _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this _30th_ day of _November_ , 2007

   

SBI# 00190526     UNIT D-E-E 17
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

 

02 1A
0004608075     $ 00.91⁰
DEC 14 2007
MAILED FROM ZIP CODE 19977



U.S.M.S
X-RAY

Office of THE Clerk
United State District court
844 N King St Lock 18
Wilmington De
19201



IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR ___SUSSEX_____ COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | * | PURSUANT TO SUPER.CT.CRIM.RULE 61(i)(5) |
| | * | |
| V. | * | CRA#S00-0302 thru 0309 |
| | * | No. _____ |
| RECARDO B. WEATHERSPOON | * | |
| ID#0001003156 | * | |
| Name of Movant on Indictment | * | *EVIDENTIARY HEARING REQUESTED* |
| | * | |
| _____ | * | |
| | * | FILED |
| Correct full name of Movant | * | DEC 17 2007 |
| | * | U.S. DISTRICT COURT |
| | | DISTRICT OF DELAWARE |

### MOTION FOR POSTCONVICTION RELIEF

### INSTRUCTIONS

(1)    This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury.

(2)    All grounds for relief and supporting facts must be included, and all questions must be answered briefly in the proper space on the form.

(3)    Additional pages are not permitted. If more room is needed, use the reverse side of the sheet.

(4)    No citation of authorities is required. If legal arguments are submitted, this should be done in a separate memorandum.

(5)    Only convictions that were included in the same plea agreement or were tried together may be challenged in a single motion.

(6)    When the motion is completed, the original must be mailed to the Prothonotary in the county in which the judgment of conviction was entered. No fee is required.

(7)    The motion will be accepted if it conforms to these instructions. Otherwise, it will be returned with a notation as to the deficiency.

### MOTION

1.    County in which you were convicted ___Sussex County_____

2.    Judge who imposed sentence ___Richard F. Stokes_____

3.    Date sentence was imposed ___Wednesday, June 14, 2000_____

A - 1

4.  Offense(s) for which you were sentenced and length of sentence(s):
    delivery of cocaine and two counts of conspiracy in the
    second degree. He was declared an habitual offender. Pursuant
    to plea agreement, he was sentence to 13 years at level V

5.  Do you have any sentence(s) to serve other than the sentence(s) imposed because
    of the judgment(s) under attack in this motion?    YES _____    NO XX
    If your answer is "yes" give the following information:
    Name and location of court(s) which imposed the other sentence(s).

    _____
    _____
    _____

    Date sentence(s) imposed: _____
    Length of sentence(s): _____

6.  What was the basis for the judgment/s of conviction? (check one)
        (XX) Plea of guilty
        ( ) Plea of guilty without admission of guilty  (Robinson Plea)
        ( ) Plea of nolo contendere
        ( ) Verdict of jury
        ( ) Finding of judge  (nonjury trial)

7.  Judge who accepted plea or presided at trial _Richard F. Stokes_

8.  Did you take the witness stand and testify?  (check one)
        No trial (X)   Yes ( )   No ( )

9.  Did you appeal from the judgment of conviction?    YES _____    NO XX
    If your answer is "yes" give the following information:
        Case number of appeal _____
        Date of court's final order or opinion _____

10. Other than a direct appeal from the judgment(s) of conviction, have you filed
    any other motion/s or petitions/s seeking relief from the judgment/s in state or
    federal court?    Yes (XX)    No ( )    How many? ( 1)
    If your answer is "yes", give the following information as to each:
        Nature of proceeding/s _____
    On August 13, 2002, I move pro se for post-conviction relief.

        Grounds raised _numerous of grounds_

    _____
    _____
    _____

        Was there an evidentiary hearing?    no
        Case number of proceeding/s _ID#0001003156_
        Date/s of court's final order/s or opinion/s _February 28, 2003_
    Did you appeal the result/s? _____ no

A - 2

11.  Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment/s under attack in this motion:

At plea of guilty or trial ___Karl Haller, Public Defender___

On appeal _____NONE_____

In any postconviction proceeding _____Acting pro se_____

12.  State every ground on which you claim that your rights were violated. If you fail to set forth all grounds in this motion, you may be barred from raising additional grounds at a later date. You must state facts in support of the ground/s which you claim. For your information, the following is a list of frequently raised grounds for relief (you may also raise grounds that are not listed here): double jeopardy, illegal detention, arrest, or search and seizure, coerced confession or guilty plea; uninformed waiver of the right to counsel, to remain silent, or to speedy trial, denial of the right to confront witnesses, to subpoena witnesses, to testify, to ineffective assistance of counsel, suppression of favorable evidence, or unfulfilled plea agreement.

ule 61(i)(5) Ground one: _DEFENDANT WAS DENIED DUE PROCESS UNDER THE 14TH AMEND._

Supporting Facts: (state facts briefly, without citing cases)

Defendant contends he's actual innocence of being an habitual criminal status.

_____*see attached memorandum*_____

_____*Evidentiary hearing requested*_____

ule 61(i)(5) Ground two: _DEFFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL._

Supporting Facts: (state facts briefly, without citing cases)

Defendant contends he's actual innocence of being an habitual criminal.

_____*see attached memorandum*_____

_____*Evidentiary hearing requested*_____

Ground three: _____

Supporting Facts: (state facts briefly, without citing cases)

If any of the grounds listed were not previously raised, state briefly what grounds were not raised, and give your reason/s for not doing so: These issues were previously raised under Rule 35(a) motion under an illegal sentence. Hall v. State, supra and Shockley v. State, supra were not decided until after defendant's sentence, and contends he's actual innocence. Rule 61(i)(5)

Wherefore, movant asks this court to grant him all relief to which he may be entitled in this proceeding.

I declare the truth of the above under penalty of perjury.

DECEMBER /1 /2006

Date _____

RECARDO WEATHERSPOON

_____

Signature of Movant

A-3

Recardo weatherspoon

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF

### GROUND ONE
#### STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO ESTABLISH THAT DEFENDANT WAS ELIGIBLE TO BE SENTENCE AS AN HABITUAL OFFENDER UNDER 11 DEL.C.§4214, THEREFORE VIOLATING HIS DUE PROCESS RIGHTS AFFORDED TO HIM BY THE UNITED STATES CONSTITUTION

13. The Delaware Suprmee Court has held unequivocally that in order fo a judge to exercise the sentencing enhancement authroity of §4214(a), the factual predicate that must be present and established on record is "... three separte convictions, each successive to each other, with some chance of rehabilitation after each sentencing." Shockley v. State, ___ A.2d ___, No. 600, 2003, Berger, Justice (Del. Supr., August 2, 2004), appeal order pg. 10. It therefore follows that the power of a sentencing judge to sentence a defendant as a habitual offended must be exercised strictly in accordance with the Delaware legislature's "carefully crafted" sentencing statutes [see Evans v. State, ___ A.2d ___, No. 67, 2004 (Del. Supr., November 23, 2002), slip opinion, at page 34]. The "carefully crafted" (Evans v. State, Supra) provision of §4214(a) direct that the judge is to conduct a hearing on the State's motion. Significantly, the applicable statutes proscribed the conduct of the hearing as an interrogation of the defendant by the Court. Unlikeᵃ "second offense" sentencing under 11 Del. C. §4215(a), a §4214 motion hearing may not be based soley upon the defendant's admissions under questioning by the Court. In other words, the General Assembly has expressly prohibited a sentencing judge from exercising the enhancing power of §4214(a) based upon a plea colloquy with a defendant. A defendant's status as a habitual offender under §4214(a) must be prove by the State beyond a reasonable doubt at a hearing, other than the defendant's admission.

14. At defendant's sentencing proceeding the State offered in evidence "certified records" copies of four prior felony convictions in their Motion declaring the defendant an habitual offender under 11 Del. C. §4214. (Ex. "A") The "certified records" do not reveal the date of each of the offense relied upon in the State's motion declaring defendant an habitual. That date would have been the only date by which the Shockley requirement of "some chance of rehabilitation" after sentencing could have been established. Under Shockley, the existence of three prior felony convictions, standing alone, is an insufficient showing to vest the

$A-4$

sentencing judge with the sentence enhancement power of §4214(a). Rather, those three prior convictions must be both successive to one another and followed by "some chance of rehabilitation." Id., at pg. 10. In other words, the date of the offense for conviction no. 2 must be after the date of the sentencing for conviction no. 1- in order, logically, for there to be "some chance of rehabilitation" before the date of the offense comprising the basis for conviction no. 2. The same is true for the date of the offense underlying conviction no. 3.

15. Thus, "successive convictions" are based upon successive dates of offenses - not arrests, indictments, or sentenings - but dates of events constituting criminal acts. As is clear from the record in this case, contrary to requirements of Shockley v. State, supra, the State's motions was not supported by proof of "three separate, successive convictions followed by some chance of rehahilitation after each sentencing", as the insufficient "certified records" submitted by the State failed to reveal the date of each of the offenses relied upon in their motion to established habitual criminal status.

16. Beyond that, the sentencing judge chose to interrogate the defendant with respect to his prior record despite the prohibition of such a procedure in §4215(a). That interrogation consisted of a total 33 words collectively describing the four prior convictions in the State's motion and the question: :Do you acknowledge that, in fact, you have these prior convictions?" (Ex. "B", sentencing proceeding trans., A-23,24-&25) The defendant cannot, consistently with §4215(a), stipulate to his habitual criminal status. The State failed to prove beyond a reasonable doubt defendant's status as an habitual criminal. In short, the defendant in this case was exposed to the enhanced penalty under §4214(a) - a possibility of life imprisonment - on the basis of the briefest of possible colloquies with the sentencing judge as to my prior record and a motion by the State containing insufficient "certified records" that fall far short of meeting the substantive rule of Shockley v. State, supra.

17. Under such circumstances, the State failed to meet its burden of proof in establishing that each predicate offense meets the requirements of §4214, and the sentencing judge did not acquire the power to enhance defendant's sentence under §4214(a), constituting legal error and abuse of discretion and therefore violative of the due process protection under the 14th Amendment to the United States Constitution. Since the factual predicate of 11 Del. C.§4214 was not prove beyond a reasonable doubt, Defendant is actual innocence of being sentence as an habitual offender, which warrants relief under 61(i)(5).

A-5

## GROUND TWO

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTENCE OF COUNSEL WHEN HIS DEFENSE COUNSEL'S IGNORANCE
OF THE GOVERNING LAW CAUSED COUNSEL TO FAIL TO RENDER
INADMISSIBLE THE LONE EVIDENCE RELIED UPON TO SUPPORT THE
DEFENDANT'S HABITUAL CRIMINAL STATUS.

18. Defendant realleges and incorporates by reference paragraphs 1
through 17 as though fully set forth herein.

19. Defendant was denied his constitutional right to effective assistance
of counsel when his defense counsel's ignorance of the governing law caused
counsel to fail to render inadmissible the lone evidence relied upon to support
the defendant's habitual criminal status.

20. As this Court recognizes, the defendant was sentence as an habitual
offender after his admission to prior convictions during a plea colloqy with
the sentencing judge. (Ex. "B", A-23,24 & 25)

21. Throughout the plea colloqy--even during the sentencing--defense
counsel was laboring under the mistaken belief that the State need not prove
their case beyond a reasonable doubt once the defenant admitted to his prior
convictions under questioning by the Court.

22. Defense counsel's failure to know and comprehend that this admission
was being used as substantive evidence against his client was grossly incompetent
and was not a result of "reasonable professional judgment." Strickland v.
Washington, 466 U.S. 668, 690 (1984).

23. A reasonably competent attorney would have known about §4214, a key
provision of Delaware Habitual criminal law that at the time of defendant's
conviction and sentence had already been operating for many years.

24. At the very least, a reasonably competent attorney would have taken
steps to read 11 Del.C.§4214 once it was made clear that the prosecution
was relying on this statute as its sole means of introducing evidence that
could declare defendant an habitual criminal, and once it was clear that the
Court was using defendant's sole admission as substantive evidence to declared
and sentence defendant as an habitual.

25. Under the terms of §4214, the burden of proof borne by the State
as to the requisite factual predicate of three prior felony convictions is
the "beyond a reasonable doubt" standard. The State's motion forms the basis
of the habitual criminal declaration sought to be obtained, and the sentencing
judge is to conduct a hearing on the State's motion [§4214(a)]. And due to
the ofren ambiguous nature of other official records, the three prior convictions
must be estblished from the docket sheets of the cases involved—the only reliable

A-6

proof of "three separate convictions followed by at least some chance of rehabilitation after sentencing.

26.  It is apparent from the record that the State' motion was not supported by proof of "three separate, successive convictions followed by some chance of rehabilitation after each sentencing.

27.  Defense counsel did not attempt to object to the insufficient "certified records" filed in the State's motion, nor did he object to prohibited the sentencing judge from exercising the power of §4214 based upon a colloqy with defendant.  No reasonably competent attorney that understood the requirements of §4214 or §4215 would have forsaken this obvious opportunity to exclude the State's crucial piece of evidence.

28.  A reasonably competent attorney would have easily rendered the "certified records" inadmission by simply pointing out to the Court that the State has failed to established date of the offense for each conviction beyond a reasonable doubt, and the use of defendant's admission as the sole evidence to stipulate his habitual status was clear error.

29.  Defense counsel's decision to forego any attempt to challenge the State's case was not based on any colorable defense strategy.  There can be no conceivable strategic or tactical rationale for failing to exclude or severely challenged the only substantial piece of evidence against his client. This failure resulted soley from his ignorance of the requirements (and the existence) of §4214.

30.  Defendant was clearly prejudiced by his defense counsel's constitutional ineffectiveness.  There is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. 694.

31.  Defendant readily admit, that he responded to the sentencing judge questions, which also included admitting to prior convictions. But there is no indictation in the record that the defendant actually saw the same "certified court records" that the sentencing judge  was working from.  The defendant did respond to the Court's question as to whether his lawyer had reviewed with him the habitual criminal "application."  However, because the judge referred to the State's §4214(a) motion as an "application;"' it is unclear if the defendant in his response to the judge's question was referring to the plea agreement (which does have a "habitual offender" block checked on it) or the "plead guilty" form required by the Superior Court to accompany a plea of guilty rather than the State's motion.  Evidentiary hearing warranted. because defendant has shown that he did not receive effective assistance of counsel during the habitual criminal proceeding, he is entitled to relief.

$A-7$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

STATE OF DELAWARE
                           :  CRA#S00-01-0302 thru
                           :  0309

   v.
                           :
                           :

RICARDO WEATHERSPOON
                           :

## CERTIFICATE OF SERVICE

I, Ricardo Weatherspoon, hereby certify that on this date DECEMBE R

1

____, 2006, I place one copy of defendant's MOTION FOR POSTCONVICTION RELIEF,

in the Sussex Correctional Institution, U.S. mailbox to be forward

to the following:

Department of Justice
114 East Market Street
Georgetown, DE  19947

                                      RECARDO WEATHERSPOON

A- 8

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR _____SUSSEX'_____ COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ✳ | |
| | ✳ | |
| V. | ✳ | |
| | ✳ | No. ___ID#___ .0001003156 |
| __RECARDO B. WEATHERSPOON__ | ✳ | CR.A.NO's – S000-01¬0302, thru 030? |
| Name of Movant on Indictment | ✳ | |
| | ✳ | |
| | ✳ | |
| Correct full name of Movant | ✳ | |
| | ✳ | |

## MOTION FOR POSTCONVICTION RELIEF

### INSTRUCTIONS

(1)    This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury.

(2)    All grounds for relief and supporting facts must be included, and all questions must be answered briefly in the proper space on the form.

(3)    Additional pages are not permitted. If more room is needed, use the reverse side of the sheet.

(4)    No citation of authorities is required. If legal arguments are submitted, this should be done in a separate memorandum.

(5)    Only convictions that were included in the same plea agreement or were tried together may be challenged in a single motion.

(6)    When the motion is completed, the original must be mailed to the Prothonotary in the county in which the judgment of conviction was entered. No fee is required.

(7)    The motion will be accepted if it conforms to these instructions. Otherwise, it will be returned with a notation as to the deficiency.

### MOTION

1.    County in which you were convicted _____Sussex_____

2.    Judge who imposed sentence __Honorable Richard F. Stokes__

3.    Date sentence was imposed _____June 14, 2000_____

Exhibit B

4.  Offense(s) for which you were sentenced and length of sentence(s):

    ___Del.NSII CS;  Consp 2nd ( two Counts )___

    ___Del. NCII CS; - 13 years at level 5___

    ___Consp @nd ( two Counts ) 2 years each at level 3 probation___

5.  Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion?    YES _____   NO _x_
    If your answer is "yes" give the following information:
    Name and location of court(s) which imposed the other sentence(s).

    _____

    _____

    _____

    Date sentence(s) imposed: _____

    Length of sentence(s): _____

6.  What was the basis for the judgment/s of conviction? (check one)
    (x) Plea of guilty
    (  ) Plea of guilty without admission of guilty (Robinson Plea)
    (  ) Plea of nolo contendere
    (  ) Verdict of jury
    (  ) Finding of judge (nonjury trial)

7.  Judge who accepted plea or presided at trial ___Honorable Richard F. Stokes___

8.  Did you take the witness stand and testify? (check one)
    No trial (  )   Yes (  )   No (  )

9.  Did you appeal from the judgment of conviction?  YES _____   NO _x_
    If your answer is "yes" give the following information:
    Case number of appeal _____
    Date of court's final order or opinion _____

10.     Other than a direct appeal from the judgment(s) of conviction, have you filed any other motion/s or petitions/s seeking relief from the judgment/s in state or federal court?   Yes (  )   No (  )   How many? (  )
    If your answer is "yes", give the following information as to each:
        Nature of proceeding/s _____

    _____

    _____

        Grounds raised _____

    _____

    _____

    _____

    _____

        Was there an evidentiary hearing? _____
        Case number of proceeding/s _____
        Date/s of court's final order/s or opinion/s _____
    Did you appeal the result/s? _____

11. Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment/s under attack in this motion:

At plea of guilty or trial _____ Karl Haller Esquire _____
On appeal _____
In any postconviction proceeding _____ Pro-se _____

12. State every ground on which you claim that your rights were violated. If you fail to set forth all grounds in this motion, you may be barred from raising additional grounds at a later date. You must state facts in support of the ground/s which you claim. For your information, the following is a list of frequently raised grounds for relief (you may also raise grounds that are not listed here): double jeopardy, illegal detention, arrest, or search and seizure, coerced confession or guilty plea; uninformed waiver of the right to counsel, to remain silent, or to speedy trial, denial of the right to confront witnesses, to subpoena witnesses, to testify, to ineffective assistance of counsel, suppression of favorable evidence, or unfulfilled plea agreement.

Ground one: _____ Ineffective Assistance of Counsel _____

Supporting Facts: (state facts briefly, without citing cases)
Counsel pressured defendant into signing plea agreement by using false evidence and testimony of State's witnesses. Failed to investigate legality of State's evidence and failure to question defendant's witnesses. Failed to represent defendant to his fullest obligation and not fully explaining full consequences of defendant accepting plea and persuing his innocence.

Ground two: _____ Prosecutorial Misconduct _____

Supporting Facts: (state facts briefly, without citing cases)
Prosecution used false evidence and testimony to obtain indictments and conviction. Pressured defendant into signing a plea when knowing he was innocent of charges and evidence did not support indictment or arrest.

Ground three: _____ Abuse of Discretion _____

Supporting Facts: (state facts briefly, without citing cases)
Judge Graves abused his discretion in denying defendant's Motion to Dismiss his attorney due to conflict, without holding a evidentary hearing, and requiring defendant to be represented by attorney who conflict was with, and denying defendant proper and professional legal assistance as required by the 6th amendment of the U.S. constitution and violation of his due process.

If any of the grounds listed were not previously raised, state briefly what grounds were not raised, and give your reason/s for not doing so: _____

_____

Wherefore, movant asks this court to grant him all relief to which he may be entitled in this proceeding.
I declare the truth of the above under penalty of perjury.

Date 8-13-07 __

_____ Locarl Weatherspoon
Signature of Movant

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

Recardo B. Weatherspoon
      Defendant

                      ID# 0001003156

     v.                      Cr.A.Nos:  IS00010302
                                     IS00010303
State of Delaware                      IS 00010305

      Respondent

MEMORANDUM IN SUPPORT OF RULE
61 POST CONVICTION RELIEF
REMEDY

     Within this Memorandum, defendant, Recardo Weatherspoon will attempt
to show that he did not receive a full and fair hearing, due to his attorney's
ineffectiveness, prosecution's misconduct, judge's abuse of discretion, Denial
of Right to Counsel and falsified testimony and evidence. Thus showing that his
plea and conviction was in violation of his 4th, 5th, 6th and 14 th Amendments
of the U.S. Constitution. Therefore showing that actions of parties within did
totally prejudice defendant Weatherspoon.

Date: _8-13-02_____

                                 *Recardo Weatherspoon*
                                 Recardo Weatherspoon 190626
                                 Sussex Correctional Institution
                                 P.O. Box 500 Merit-West
                                 Georgetown, Delaware
                                         19947

i

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

RECARDO WEATHERSPOON

ID# 0001003156

v

Cr.A.Nos - S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 thru 0309

STATE OF DELAWARE

## NOTICE OF MOTION

TO:     Adam D. Gelof Esquire
        Deputy Attorney General
        Department of Justice
        114 East Market Street
        Georgetown, Delaware
                19947

PLEASE TAKE NOTICE that the within Motion for Rule 61 Post-Conviction Remedy will be presented to this Honorable Court to be heard at its earliest convenience.

Date:  8-13-02

Recardo Weatherspoon
Recardo Weatherspoon 190626
Sussex Correctional Institution
P.O. Box 500  Merit-West
Georgetown, Delaware
                19947

ARGUMENT ONE

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant is very sure that this Court will clearly apply the correct legal standard of this ground and that being namely that for the defendant to prevail on his ineffective assistance of counsel claim, he has to establish that his attorney failed to exercise his skills and diligence as that a reasonably competent attorney would exercise under similiar circumstances and that he was prejudiced by his attorney's actions. See Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064-65 and Hill v, Lockhart, 474 U.S. at 57, 106 S.Ct. at 368-70, (citing Strickland)

Though the Strickland anaylsis focuses on counsel's actual performance at trial, the analysis under Chronic, 466, U.S. at 649 - 58, 104 S.Ct. 2039, 2046, looks to the circumstances surrounding counsel's full representation.

Therefore, the defendant's attorney's performance legally required him to make every effort to investigate all evidence the state had against defendant, so as to properly advise defendant as to what procedure to proceed towards and do so to eliminate the distorting effects of hindsight, and respectfully this Court should attempt to reconstruct the circumstances of counsel's challenged conduct. Yet, the Court should be aware that hindsight cannot be used to condemn counsel's performance, but it also cannot be used to justify it either.

Defendant argues that if counsel had persued the factor that the police report and picture of the evidence of the $20 dollar bills allegedly taken from defendant or given to defendant during alleged buy, did not correspond, and that photographs of alleged $20 dollar bills were from some other case of another person, had addressed the substantial fact that the officer(s) did not receive said currency from the defendant or deliver such to defendant, would have had a great probative value, as it would raise serious legal questions as to grounds of perjured testimony, and not mention tampering with evidence and prosecutorial misconduct in obtaining indictments on such false reports and evidence.

Especially since the serial numbers of the alleged $20 dollar bills given to defendant to purchase alleged drugs noway matched serial numbers of bills allegedly given defendant in police report, or the photocopies of said bills.

It was this false evidence and information used by the State's attorney that they obtained the indictments by, and knowing such discrepency was present.

1

## CAUSE   PROVEN

The " Cause Prong" of Rule 61(i(3)(a) can be demonstrated by defendant proving that he received ineffective assistance of counsel at pre-plea and plea stages and at sentencing stage.. Defendant argues that there was a conflict between counsel and defendant on his representation and that counsel failed to make any reasonable inquiries into ascertaining the validity of State's evidence and State's witnesses testimonies and the Court failed to investigate these matters brought before it by the defendant.

## PREJUDICE IS PROVEN

The " Prejudice Prong " of Rule 61 (i)(3)(B) can also be demonstrated by defendant proving that he would not have accepted his guilty plea, had his defense counsel informed him of the false evidence and testimonies of the State's witnesses, that was going to be used against him.

Defendant argues within his arguments that if defense counsel had investigated State's evidence, had not exerted pressure on him to accept plea, lied to him and contacted defendant's witnesses, the defendant would have proceeded to trial and in all possibility, would have been found not guilty because of the false evidence and testimony, or at the worst be found guilty of lesser charges of a misdeamnor type and received a lighter sentence.

## MISCARRIAGE OF JUSTICE PROVEN

Under Rule 61(i)(5), a defendant who can demonstrate that there was a miscarriage of justice because of a Constitutional violation in his case, may have his claims for relief reviewed and the requested relief granted.

The terminology inthis delicate area is sometimes confusing. At the Federal level, this term has been described as a showing of factual innocence. Murray v. Carter, 106 S.Ct., 2639, 2649 (86).

Whereas, in Delaware Courts ( over State's objectional term ) it has been defined more broadly to include deprivation(s) of substantial rights. Webster v. State, 604, A.2d 1364, 1366 (1992) citing Younger, 580 A.2d at 555.

## BARS   INAPPLICABLE

The defendant respectfully submits in his arguments and evidence submitted that there is a reasonable probability that the defense counsel made no legitimate effort to investigate the evidence that the State allegedly had on defendant and the alleged money used in the alleged drug buy from defendant. Had he, he would have discovered the State was using false evidence and testimony to acquire an conviction and that the defense attorney pressured the defendant into accepting State's plea agreement without revealing true nature of evidence or testimony.

## PROCEDURAL BARS HAVE BEEN OVERCOME OR PASSED THROUGH

The Standard and Scope of Review to these arguments are whether defendant's claims for relief meet the procedural hurdles of Superior Court Criminal Rules 61 (i)(1)(3) and (5) in a manner which will permit this Court to grant relief. The procedural hurdles of these rules and (2) and (4) have been met so that this Court may evaluate the merits of defendant's claims abd grant relief as requested.

## TIME LIMITS DO NOT APPLY

Under Rule 61(i)(1), a defendant must file a Motion for Post Conviction Relief within " Three years after judgement of conviction is final."

As defendant entered into a plea agreement on June 14, 2000, therefore with his only appeal being on his sentence, leaving his time period to have expired on July 14, 2000, the defendant has until July 13, 2003 to file his Rule 61 Post Conciction Remedy.

This Motion is filed timely and the time limit bar contained within Rule 61 (i)(1) has been overcome, even with defendant filing a previous one on March 3, 2002, but allowed to withdraw said motion without prejudice on May 16, 2002.

## CAUSE AND PREJUDICE ARE OVERCOME

Under Rule 61 (i)(3), a defendant must demonstrate both " Cause and Prejudice" in order to have the merits of his claim(s) reviewed by this Court and before any relief can be granted.

with this parameter in mind, one must not forget that the miscarriage of justice exception is not an independent avenue of relief. Rather, if established it only functions as a doorway permitting a defendant to have considered on the merit claims of Constitutional error that would otherwise be procedurally barred.. Webster, 604 A.2d at 1336; and Schulp v. Delo, 115 S.Ct. 851, 861 (1995).

Defendant's arguments will establish that defense counsel and State's Attorney General's Office violated defendant's guarantees under the 5th, 6th, and 14th Amendments of the U.S. Constitution, as well as his guarantees under the Delaware Constitution. Thus prejudicing defendant and denying him any full and or fair hearing within the Delaware Superior Court of Sussex County.

been two weeks before. Infact, the defendant was arrested on January 11, 2000
and has been incarcerated since then, See: Exhibit 1, and there was no feasible
or logical way that defense counsel could have seen defendant at the crime
scene on New Hope Rd at the time he said he did.

Defense attorney Haller abandoned any and all investigation into anything
that defendant had told him and continued to do so all through his representation
of him. For if he had done so, he would have discovered that the defendant was
telling the truth and what was being said about him and the alleged drug sales
were total lies and that the charges were in retaliation for his not co-operating
with detective Zolper the day before on 12-15-99.

Defense attorney Haller's duty was to be loyal to the defendant and to
investigate any and all matters put before him, by the defendant or the State and
do so with the defendant's best interests in concern and not that of just trying
to expedite an conviction to relinguish his legal responsibilities of having to
represent the defendant at a trial before his peers and forcing the State to
prove him guilty above all doubt. Plus allowing me the opportunity to confront
the State's witnesses and informants, who could possibly condemn him in front of
a jury. This is a guaranteed right under Delaware and U.S. Constitution.

By defense attorney Haller's actions or misactions, he did totally
jeopardize the defendant's case and totally prejudiced the defendant and denied
him the opportunity to prove himself not guilty of the crimes levied against him,
and doing so denied the defendant the guaranteed effective assistance of counsel
as required by the 6th amendment of the U.S. Constitution and Delaware's also.

Therefore, if counsel had done what he was appointed to do by this Court
and not played advocate to the State, the result at a trial would have been more
favorable than defendant taking a plea by counsel, who gave him wrong and illegal

5

advice, just to obtain an conviction, instead of performing his duties as requierd. See:  Strickland supra; Lockhart supra; and Chronic supra. Also see Professional Conduct Rules: Rule 1.1 Competence; Rule 1.2(a); 1.4(b) and U.S. v. Ellison, 798 F.2d 1102 and Foster v. Dugger, 823 F.2d 402 and Reardon, 759 A.2d 568 ( Del 2000 )

6

ARGUMENT 2.

B) PROSECUTORIAL MISCONDUCT

GROUND

Use of false evidence and false testimony to obtain Defendant's signature on a Plea Agreement and to obtain a conviction.

ARGUMENT

Defendant, Weatherspoon, is aware that to be entitled to relief on the ground that false evidence and/or perjured testimony was used in obtaining his conviction, he must establish that: 1) the testimony was false and perjured; 2) it was material to the conviction; and 3) the prosecutor either participated in or had knowledge of falsity. Even though Defendant entered into a plea, the principle still adheres to this method of obtaining a conviction. (Jackson v. U.S., 338 F.Supp. 7 (D.C.N.J. 71). Yet, even though Defendant did not proceed to trial, but done so, the same evidence used at his plea stage by the State, would have been used against him at trial stage by the State, if he elected to do so.

Within the State's witnesses' complaints, Detective M. Zolper of S.I.U. South, he states that he allegedly bought as estimated .668 grams of cocaine with a positive test result, or rather undercover officers Detective Wright and Goode and they gave Defendant (4) four twenty-dollar bills of U.S. currency in exchange for these alleged drugs. The officers also stated in their report that the Serial Numbers of the bills given Defendant were #AC82843821E; AC55890456A; B45632375B and AC55890456A and this act was to have occurred on December 16, 1999. (Exhibit 2 & .4).

Also on December 17, 1999 Detective Wright and another Detective allegedly purchased .201 grams of alleged cocaine from Defendant with two twenty dollar bills of U.S. currency bearing several Serial Numbers of L01852294I and L41275349F. (Exhibit 2 & 4)

The legal issue at hand is the State only submitted copies of (2) two twenty dollar bills of U.S. currency and those bore the Serial Numbers of #B75524878C and AC86206187A. Neither one of these serial numbers match to Exhibits 1,2,3&4). (Exhibit 5).

7

Thus it can be stated that the within discrepancies between alleged bills given defendant at time of buys and those alleged copies of those bills given and the totally different Serial Numbers of aforesaid bills constitute that the State's witnesses submitted false evidence and perjured testimony within their Complaints of #08-99-6421 and #08-99-6423 and the State was well aware of these discrepancies.

Therefore, the State witnesses falsehoods not only bear upon their credibility, but it also had a great prejudicial consequence and impact in getting defendant to plea guilty of the alleged crimes. A lie is a lie, and no matter what its subject is and since the State's witnesses falsehood and non-conforming evidence were relevant in pressuring to enter a plea of guilty, the prosecuting attorney at the time of plea negotiations and sentencing had the legal responsibility to correct what he knew was false and elicit, the truth.

Thus, with the State knowingly using and allowing this false testimony and evidence to be entered and used to threaten/induce defendant into entering his Plea Agreement unknowingly and unintelligently constitutes a denial of his Due Process guarantees under 5th, 6th and 14th Amendments and establishes prosecutorial misconduct before indictment as well as during plea negotiations and at sentencing.

This action or inaction of the State's attorney was highly prejudicial to the defendant, for it not only pertained directly to the credibility of the witnesses, but also to the highly material issue of whether Defendant Weatherspoon actually did sell any drugs to these undercover officers and receive any such bills as declared that he did.

Defendant believes he has proved the requirements that he is entitled to the relief he is requesting and that the State was well aware of such discrepancies and deliberately failed to divulged such information to the Defendant or his counsel, but deliberately used it to obtain a plea of guilty from defendant and did so to deprive the defendant of a full and fair hearing. (Byrd v. U.S., 377 A.2d 405).

8

ARGUMENT 3.

C)  ABUSE OF DISCRETION

GROUNDS

Did Judge Graves abuse his discretion in denying Defendant's Motion to Disqualify Defense Counsel Haller, without holding a hearing, and was it prejudicial to Defendant.

ARGUMENT

On May 25, 2000, Defendant filed his Motion to Disqualify his counsel, Mr. Haller due to conflict of interest.  On June 5, 2000, the Honorable Judge Graves denied Defendant's aforesaid motion and in doing so prejudice Defendant when not conducting an Evidentiary Hearing and allowing defendant to be represented by counsel whose loyalties and best interest were not directed to defendant, but that achieving a conviction alongside the State. SeeExhibits 8 & 9

Under Rule 61 (i)(5), it clarifies that all bars of (1),(2) and (3) shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of the Defendant's conviction.

This is exactly what Judge Graves accomplished on June 5, 2000 when denying Defendant's Motion to Disqualify his counsel, due to a severe conflict as depicted in his Ineffective claim in this Postconviction Relief petition.  See Exhibit 10

Any time a defendant raises a claim of the nature that counsel and defendant have a conflict of any type and defendant files such a motion and brings it before the court's attention, that court is required to hold an Evidentiary Hearing to resolve such conflict and if not doing so, leaves the defendant at a total disadvantage of being represented by counsel's ineffectiveness, that would cause severe prejudices toward him and thus violate his 5th, 6th, and 14th Amendment Guarantees.  This is precisely what occurred within this present case.  (U.S. v. Ziegenhaben, 890 F.2d 937; and Webster v. State, Del. Supr., 410 A.2d 500).

It was within defendant's pro-se motion to have his attorney disqualified on May 25, 2000, that he asserted that counsel was not investigating nay thing he told him or trying to proceed to trial, but was pressuring defendant into taking aplea, by tactics that were not consistent with representing him fully. When the Court was made aware of this situation, it should have acted immediately to rectify the problem. Upon defendant's averment of such conflict, automatically showed that his attorney's representation fell below the required standard and thus showing that counsel had a true conflict of interest with the defendant and for counsel to argue in favor of defendant's motion, it would most definitely require his attorney to admit to serious ethical violations and thus possibly subject himself to liability for malpractice and then on the otherhand any and all contentions by counsel that defendant's allegations were not true, would automatically contradict the defendant and again would most definitely support the defendant's motion to disqualify his counsel, as there would have been present and visible to all, that his client's best interest were not his priority, but only that of an conviction by plea instead of trial.

With this Court forcing the defendant into being represented by counsel where a conflict existed and denying the defendant's motion to have that attorney dismissed due to that discrepency, and not holding a hearing to resolve that issue, thus forced the defendant into accepting a plea for something he didn't do an ultimately intimidated the defendant into answering any and all questions at the plea colloguy as yes, as instructed by his counsel, and did so in fear of further or greater retaliatory acts or a greater punishment imposed for exercising his rights. As this was done against the defendant for exercising his right to have his attorney dismissed for failure to do his required duty under his Professional Code of Conduct and the 6th amendment of the U.S. Constitution.

10

This Court never gave the defendant that opprotunity to present his factual allegations and evidence to support such, but ultimately forced the defendant to do something against his will, that he he chose not to do. Thus prejudicing defendant severely.

Thus for this Court and Judge to allow this -ype of conduct by defense counsel to go unquestioned and to not allow the defendant to present his worries and concerns about the flagrant violations of defendant's 5th and 6th Amendment rights to due process and effective assiatance of counsel, did severely prejudice the defendant and forced defendant to enter into a plea of guilty for crimes which he did not commit, and as noted to counsel many times by defendant.

This now brings forth the standing for the denial of the right to counsel, or known as Constructive Denial of Counsel, which also can fall under this Abuse of Discretion argument:

In addressing this issue and citing and using Chronic, 466, U.S. at 649 - 52, 104 S.ct. 2039 as an application in support of this argument, the defendant is aware that he must show that his counsel's actions were infact a combined total failure to actively advocate his client's cause and did so with repeated expressions of contempt for his client's alleged actions and also basically offered no -dvice of truthful or advocable purpose to the defendant at a plea negotiation, hearing and conducted no proper investigation to assist or aide the defendant in proving his innocence. See: Rickman v. Bell, 131 F.3d 1150, 1157 and Childress 103 F.3d at 1231.

Defendant has proven this greatly within his arguments and showing that this is exactly what defense counsel ultimately achieved and did so at defendant's misfortune. Defense attorney at every moment insisted on informing the defendant

11

that if he did not take the State's offer, he would definitely be found guilty
at trial  and faced the minimum of 40 years injail to a guaranteed life sentence.
This in itself would scare even the strongest of minded persons facing the
possibility of spending the rest of their life in jail, into entering into a plea,
even with knowing they are actually innocent of the charges before them and then
realizing that their attorney did not have their best interests in mind, but only
that of getting a conviction without having to perform his required dutied as a
defense counsel and make  the State prove their case beyond any and all reasonable
doubt.

Defendant has proven that defense counsel never actually fully
investigated any of the State's evidence, nor did he contact vital witnesses that
would have exonerated the defendant of what he was falsely accused of. Thus had
an hearing been held , as required, into defendant's motion to dismiss his
attorney, due to his miscations, defendant would have possibly been appointed an
attorney who's best interests would have been those of the defendant's and tried
and proved the defendant's innocence and not that of wearing two hats and playing
as an advocate with the State, which is exactly what defense counsel Haller chose
to do in this present case.

In the this action, with Judge Graves's denial of defendant's motion to
dismiss counsel and not holding a hearing, denied the defndant the right to
representation by competent counsel or effective counsel, and totally prejudiced
the defendant in this constructive denial of a guaranteed Constitutional right.

12

The within arguments and evidence sufficiently support any "Cause and Prejudice" standard required by Rules 61 (i)(4) and (i)(5), thus envoking the full benefits due to defndant by such.

## CONCLUSION

WHEREFORE, defendant prays that this Honorable Court for the ongoing reasons within the attached Post-Conviction, vacates the order of June 14, 2000 and allow defendant to withdraw his plea and proceed to trial, or at the minimum hols an evidéntary hearing on defendant's claim of Ineffective Assistance of Counsel, and prosecutor's use of false evidence and testimonies.

Date: 8-13-02

Respectfully Submitted

*Recardo Weatherspoon*

Recardo B. Weatherspoon 190626
Sussex Corr. Institution
P.O. Box 500    Merit-West
Georgetown, Delaware 19947

13

## CERTIFICATE OF SERVICE

I, Recardo Weatherspoon, defendant, pro-se, hereby avow that two (2) true and correct copies of the within Rule 61 Post – Conviction was served upon the Prothonotary's Office of The Superior Court in and for Sussex County, in Georgetown, Delaware. Such was mailed by first class postage, paid by the Sussex Correctional Institutional Mail Room on this day of ___13___ of the month of ___August___ 2002.

Date: _8-13-02_

Recardo Weatherspoon 190626
Sussex Corr. Institution
P.O. Box 500  Merit-West
Georgetown, Delaware
19947

14



Adult
Complaint and Warrant
In the Justice of the Peace Court
In and for the State of Delaware
State of Delaware vs RICARDO WEATHERSPOON

. MATTHEW M ZOLPER (07870), of TROOP 8 STATE POLICE do hereby state under
oath, or affirmation, to the best of my knowledge, information and belief that
the above-named accused violated the law of the state of Delaware by
committing criminal acts in Sussex county on or about the date(s) and at or
about the location(s) as indicated in Exhibit A hereto attached and made a
part hereof.

WHEREFORE, your affiant prays that the above named accused may be forthwith
approached and held to answer to this complaint consisting of 8 charges, and
to be further dealt with as the law directs

FILED

SWORN, To and subscribed before me this 06 day of January A.D. 2000

DEC 17 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Affiant/Video Phone Warrant

7870

Judge/Master/Commissioner Court Official

===============================================================================
(To be completed by Judge/Master/Commissioner/Court Official)
Jurisdiction resides in Family Court because: (Check and complete)
_____ The crime was committed by a child
L._____ A misdemeanor was committed against a child
C._____ A misdemeanor was committed by one family member against
         another family member
D._____ Other. Explain _____

===============================================================================
WARRANT

TO ANY CONSTABLE or other authorized person:

WHEREAS, the foregoing complaint consisting of 8 charges, having been made, as
listed in Exhibit A which is attached hereto and incorporated herein, and
having determined that said complaint has been properly sworn to, and having
found that there exists probable cause for the issuance of process, based upon
the affidavit of probable cause which is attached hereto and incorporated
herein as Exhibit B, you are hereby commanded in the name of the State of
Delaware, to take RICARDO WEATHERSPOON accused, and bring same before

JUSTICE OF THE PEACE COURT 05, FORTHWITH, to answer said charges

GIVEN UNDER MY HAND, this 06 day of January A.D. 2000

Judge/Master/Commissioner Court Official

rant executed by _____  7867
|| day of January _____
Police Complaint No 0800006421    WR:0800000004:WR

0031003/9

Adult
Complaint and Warrant
In the Justice of the Peace Court
In and for the State of Delaware
State of Delaware vs RICARDO WEATHERSPOON

I, MATTHEW M ZOLPER (07870), of TROOP 8 STATE POLICE do hereby state under
o  or affirmation, to the best of my knowledge, information and belief that
the above-named accused violated the law of the state of Delaware by
committing criminal acts in Sussex county on or about the date(s) and at or
about the location(s) as indicated in Exhibit A hereto attached and made a
part hereof.

WHEREFORE, your affiant prays that the above named accused may be forthwith
approached and held to answer to this complaint consisting of 8 charges, and
to be further dealt with as the law directs

_____
Affiant

SWORN TO and subscribed before me this 06 day of January A.D., 2000

_____ Unofficial Copy - Do Not Sign _____
Judge/Master/Commissioner/Court Official

=======================================================================
(To be completed by Judge/Master/Commissioner/Court Official)
Jurisdiction resides in Family Court because: (Check and complete as required)
A. _____ The crime was committed by a child
B. _____ A misdemeanor was committed against a child
C. _____ A misdemeanor was committed by one family member against
           another family member
D    _____ Other. Explain _____
=======================================================================
WARRANT

WHEREAS, the foregoing complaint consisting of 8 charges, having been made, as
listed in Exhibit A which is attached hereto and incorporated herein, and
having determined that said complaint has been properly sworn to, and having
found that there exists probable cause for the issuance of process, based upon
the affidavit of probable cause which is attached hereto and incorporated
herein as Exhibit B, you are hereby commanded in the name of the State of
Delaware, to take RICARDO WEATHERSPOON accused, and bring same before

**JUSTICE OF THE PEACE COURT 05, FORTHWITH, to answer said charges.**

GIVEN UNDER MY HAND, this 06 day of January A.D., 2000

_____ Unofficial Copy - Do Not Sign _____
Judge/Master/Commissioner/Court Official

Warrant executed by _____ (Name/Agency) on
_____ day of _____,_____.
Police Complaint No.0800006421    WR:0800000004;WR

Exhibit A

State of Delaware vs RICARDO WEATHERSPOON

---

Court Case: 0001003156

---

Complaint Number: 0800006419    Arrest Number:         Charge Sequence: 001
Charge: DELIVERY OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE
n Violation of: 16 DE-4751-000A-F C
Location of Violation: NEW HOPE ROAD APPROX. 2 MILES SOUTH OF ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Sussex, State of Delaware, did knowingly and unlawfully
        deliver Crack Cocaine, a Narcotic Schedule II Controlled Substance as
        classified under Delaware Code, Title 16, Section 4716 00b4

Complaint Number: 0800006419    Arrest Number:         Charge Sequence: 002
Charge: CONSPIRACY SECOND DEGREE
         - AGREEMENT TO ENGAGE IN FELONY CRIMINAL CONDUCT          0303
In Violation of: 11-DE-0512-0001-F-G
Location of Violation: NEW HOPE ROAD APPROX. 2 MILES SOUTH OF ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Sussex, State of Delaware, did when intending to
        promote the commission of a felony, did agree with ▆▆▆▆▆▆▆▆ to
        engage in conduct constituting the felony of Delivery of Crack
        Cocaine and did commit an overt act in the furtherance of said
        conspiracy by committing Delivery of Crack Cocaine

Complaint Number: 0800006421    Arrest Number:         Charge Sequence: 003
Charge: DELIVERY OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE
In Violation of: 16-DE-4751-000A-F-C                              03c4
Location of Violation: NEW HOPE ROAD CR 213 2 MILES SOUTH OF ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Sussex, State of Delaware, did knowingly and unlawfully
        deliver crack cocaine, a Narcotic Schedule II Controlled Substance as
        classified under Delaware Code, Title 16, Section 471600b4

Complaint Number: 0800006421    Arrest Number:         Charge Sequence: 004
Charge: CONSPIRACY SECOND DEGREE
         - AGREEMENT TO ENGAGE IN FELONY CRIMINAL CONDUCT          0305
In Violation of: 11-DE-0512-0001-F-G

 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999,
        the County of Sussex, State of Delaware, did when intending to
        promote the commission of a felony, did agree with ▆▆▆▆▆▆ to
        engage in conduct constituting the felony of Delivery of cocaine and
        did commit an overt act in the furtherance of said conspiracy by
        committing Delivery of cocaine

Exhibit A
State of Delaware vs RICARDO WEATHERSPOON
-----------------------------------------------------------------------
Court Case: 0001003156
-----------------------------------------------------------------------
Complaint Number: 0899006420    Arrest Number:            Charge Sequence: 005
Charge: DELIVERY OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE
In  iolation of: 16-DE-4751-000A-F-C                      0300
Location of Violation: NEW HOPE RD CR 213 2 MI S/O ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Delaware, State of Delaware, did knowingly and unlawfully
        deliver Crack Cocaine, a Narcotic Schedule II Controlled Substance as
        classified under Delaware Code, Title 16, Section 4716 00b4

Complaint Number: 0899006420    Arrest Number:            Charge Sequence: 006
Charge: CONSPIRACY SECOND DEGREE
        - AGREEMENT TO ENGAGE IN FELONY CRIMINAL CONDUCT        0307
In Violation of: 11-DE-0512-0001-F-G
Location of Violation: NEW HOPE RD CR 213 2 MI S/O ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Sussex, State of Delaware, did when intending to
        promote the commission of a felony, did agree with           to
        engage in conduct constituting the felony of Delivery of Crack
        Cocaine and did commit an overt act in the furtherance of said
        conspiracy by committing Delivery of Crack Cociane

Complaint Number: 0899006423    Arrest Number:            Charge Sequence: 007
Charge: DELIVERY OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE
In Violation of: 16-DE-4751-000A-F-C                      0308
Location of Violation: NEW HOPE RD APPROX 2 MI S/O ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Sussex, State of Delaware, did knowingly and unlawfully
        deliver Crack Cocaine, a Narcotic Schedule II Controlled Substance as
        classified under Delaware Code, Title 16, Section 4716 00b4

Co  laint Number: 0899006423    Arrest Number:            Charge Sequence: 008
Charge: CONSPIRACY SECOND DEGREE
        - AGREEMENT TO ENGAGE IN FELONY CRIMINAL CONDUCT        0309
In Violation of: 11-DE-0512-0001-F-G
              NEW HOPE RD APPROX 2 MI S/O ELLENDALE
 TO WIT: RICARDO  WEATHERSPOON, on or about the 16th day of December, 1999, in
        the County of Sussex, State of Delaware, did when intending to
        promote the commission of a felony, did agree with           to
        engage in conduct constituting the felony of Delivery of Crack
        Cociane and did commit an overt act in the furtherance of said
        conspiracy by committing Delivery of Crack Cocaine

Exhibit B
Affidavit of Probable Cause

State of Delaware vs RICARDO WEATHERSPOON * Police Complaint: 0800006421
Also known as: RECARDO                        SBI Number: 00190626
Date of birth: 10/26/1966      Sex: M       Race: B      Accused's age: 33
Eyes: BRO       Hair: BLK      Height: 506      Weight: 135
Accused's home add: PO BOX 222               Social Security Number 221528011
                   :                          Driver's License DE - 1318805
                   : ELLENDALE, DE 19941
                                              Name, Home and Work Addresses, and
Accused's Home Ph : 0                         Telephone Numbers of Next of Kin
                                              or Parent/Guardian
Accused's employer: WILLIAM HAMES             : SANDY WHITE
                   :                          :
                   :                          :
                                              : MILFORD, DE 19963
Accused's Emp Pho: 0                          Phone: 3024229432
Accused's Work Hr:                            Work :
                                              :
                                              :
Relation: Vict to accused:                    :

Victim's Age :
Victim's D.O.B. :
Date(s) and time(s) of offense: 12/16/1999 19:15 thru 12/16/1999 21:00
Location where offense occurred: NEW HOPE RD APPROX 2 MI S/O ELLENDALE

   Your affiant MATTHEW M ZOLPER can truly state that:
   1. On 121699, Detectives from DSP SIU South conducted Delivery of cocaine
      investigations on New Hope Road aka The Hole. This is a community that
      is located on CR 213 approximately 2 miles south of Ellandale.
   2. On 121699, I purchased crack cocaine from Ricardo Weatherspoon and
      Nicholas Mosely on New Hope Road on CR 213 approximately 2 miles south
      of Ellendale. This occurred between 1915 and 2100 hours.
   3. On 121699, Detective Wright purchased crack cocaine from Ricardo
      Weatherspoon and Nicholas Mosely on New Hope Road on CR 213 approxi-
      mately 2 miles south of Ellendale. This occurred between 1920 & 1922hrs
   4. On 121699, Detective Short purchased crack cocaine from Ricardo Weather
      spoon and Nicholas Mosely on New Hope Road on CR 213 approximately 2
      miles south of Ellendale. This occurred between 2000 and 2100 hours.
   5. On 121699, Detective Wright again purchased crack cocaine from Ricardo
      Weatherspoon and Nicholas Mosely on New Hope Road on Cr 213 approxi-
      mately 2 miles south of Ellendale. This occurred between 2012 and 2013
      hours.
   6. Both suspects were indentified through my investigation in this area.
   7. All substances that were purchased were field tested positive by the
      purchasing Detectives on 121699 with #13 Cocaine HCL & Freebase
      reagent test kits. All substances were not trafficking weight.

(Affiant)

(Judge-Master-Commissioner)
Sworn to and subscribed
this 06

Exhibit B

Statement of Probable Cause (Continued)

State of Delaware vs RICARDO WEATHERSPOON

===============================================================================

Affiant:
MATTHEW M ZOLPER TROOP 8 STATE POLICE Phone 0 Work 0

Victims:

_____
Affiant

Sworn and subscribed before me this 06 day of January A.D., 2000

_____
Judge/Master/Commissioner/Court Official

Exhibit B

Statement of Probable Cause (Continued)

State of Delaware vs RICARDO WEATHERSPOON

sworn and subscribed before me this 06 day of January A.D., 2000

_____
Judge/Master/Commissioner/Court Official

_____        _____
      (Affiant)                    (Judge-Master-Commissioner-Court Official)
                                   Sworn to and subscribed before me
                                   this 06 of January, 2000

State of Delaware
Criminal Justice Information System


Warrant Authorization Document


In the Case of The State of Delaware VS RICARDO WEATHERSPOO

Warrant Number: 0800000004 for Court Case Number: 0001003156
with Defendant SBI Number ID: 00190626 was duly signed:


By: HOPKINS WILLIAM J. JR.


and noted in the Criminal Justice Information System
by: RONDA R MELSON                    on: January 06, 2000 at 03:07 PM



```
**    NOTICE OF WANTED PERSON AUTOMATED ENTRY    **
```

ATTACH THIS FORM TO THE WARRANT

Warrant OCA number 0800000004 was marked for automatic entry

into the WANTED PERSON file by the automatic extradition process.

Offender Name:   RICARDO WEATHERSPOON

Date of Warrant: January 06, 2000

The record will be loaded to the WANTED PERSON file upon approval of this warrant by the court.

# DELAWARE STATE POLICE.— EVIDENCE

COMPLAINT NO. 08-99-6YY

VICTIM

SUBJECT ▮ Ricardo Witherspoon

TYPE OF EVIDENCE ▮ Cocaine (crack) (.25 grams)

COLLECTED BY Det. J. Weaver 7205          DATE /2/26/99 TIME 1922

LOCATION New Hope Rd + Lois To + Ellendale

WITNESSES ▮

REMARKS Sub-Evidence — Troop 6 — SIU-Team Locker

TYPE OF CASE Del. Crack

INVEST. OFFICER Det. Weaver 7205

CHAIN OF CUSTODY

|  | DATE | TIME | LOCATION |
|---|---|---|---|
| TURNED OVER TO | | | |
| RECEIVER'S SIGNATURE | | | |
| TURNED OVER TO | DATE | TIME | LOCATION |
| RECEIVER'S SIGNATURE | | | |

C

**Delaware State Police Special Investigations Unit**
**Criminal Investigation (Mosley, Weatherspoon)**
**Complaint Number 08-99-6419**
Page 2 of 4


Interview Victim: N/A


Interview Suspect / Defendant:

Suspect #1: ████████████  *Mosley*
Suspect #2: Ricardo Weatherspoon

  The above listed suspects have not been interviewed as of this date. The suspects will
be interviewed upon their arrest.


Interview Witnesses:

Witness #1: ███████████████  *Lopez*
Witness #2 ████████████  *Goode*

  Witnesses #1 was also conducting an undercover purchase of crack cocaine at the same
time I was but Witness #1 was in another undercover vehicle. Witness #1 also purchased
a quantity of crack cocaine from the above listed suspects. Witness #2, provided back-up
support and surveillance during this complaint.


Investigative Action:

  On 12-16-1999 at approximately 1830 hours, a past proven reliable cooperating
individual hereafter referred to as CI-1 told me that there were several subjects selling
crack cocaine in the area known as "The Hole" on CR-213 south of the town limits of
Ellendale. "The Hole" is also known as New Hope Road. The roadway is approximately
¼ of a mile long. CI-1 advised that a black male known as Ricardo Weatherspoon who is
approximately 5'-05", wearing a dark coat and a dark colored hat was standing with
another black male known as ████████████ is approximately 6'-00" tall and
wearing a camouflage coat and a dark colored hat. Both of these subjects were selling
crack cocaine on New Hope road.

Delaware State Police Special Investigations Unit
Criminal Investigation█████████, Weatherspoon)
Complaint Number 08-99-6419
Page 3 of 4

At approximately 1920 hours, I responded to the above location known as "The Hole".
I drove my undercover vehicle onto New Hope Road. A black male wearing a dark
jacket and a dark hat waived me down. Weatherspoon was standing next to another black
male that was wearing a camouflage jacket and a dark hat. Both of the black males
approached my undercover vehicle. I recognized the black male who was wearing the
dark colored jacket as Ricardo Weatherspoon. I was familiar with Ricardo Weatherspoon
because he was assigned to DSP-Troop #7 from SCI to detail the State Police Vehicles. I
had seen him at DSP-Troop #7 on several occasions. The other black male who was
wearing the camouflage jacket I was able to identify as █████████. I recognized
█████ from an arrest photograph that was obtained from DSP-Troop #4. After being
waived down I stopped my undercover vehicle next to the above suspects. Suspect
Weatherspoon asked me what was I looking for? I told him I wanted a "twenty"
(referring to $20.00 worth of crack cocaine.) He told me to wait and he walked over to
suspect █████ I heard suspect Weatherspoon tell suspect █████ that the "white guy
wants a twenty". Suspect █████ reached into his right pants pocket and he removed a
light colored container he then emptied something into his right hand and then he placed
the object into the right hand of suspect Weatherspoon. Suspect Weatherspoon walked
over to me and he placed a piece of suspected crack cocaine into my right hand. I
examined the piece of crack cocaine and then I handed suspect Weatherspoon a twenty-
dollar bill in exchange for the crack cocaine. After the transaction I maintained custody
of the crack cocaine and I departed from the area. I later responded to the Special
Investigations Unit office where I field tested, weighed and logged into evidence the
crack cocaine purchased during this investigation. (For complete details see the evidence
section of this report.)

**Examination of Crime Scene:**

The purchasing of the crack cocaine took place on New Hope Road. New Hope Road is
on the east side of CR 213 approximately 2 miles south of the town limits of Ellendale.

**Delaware State Police Special Investigations Unit**
**Criminal Investigation (Mosley, Weatherspoon)**
Complaint Number 08-99-6419
Page 4 of 4

**Evidence Section:**

At approximately 2100 hours, I responded to the Special Investigations Unit. Upon my arrival I field tested, weighed and logged into the temporary evidence locker the crack cocaine purchased during this investigation. I field tested the crack cocaine using a #13 Cocaine HCL and Free Base Reagent Field Tester. I obtained positive results indicating a presence for cocaine. I then weighed the crack cocaine using an electronic digital scale that is maintained at the office for the weighing of controlled substances. I obtained and approximate weight of .25 grams. I then logged the crack cocaine into the temporary evidence locker.

For a list of the serial numbers for the United States Currency used during this investigation see the attached photocopy.

**Stolen Property: N/A**

**Prosecution Action:**

This case is pending active.

# CRIME REPORT

| | | 2 NO. VICT'S | 3 REPORT DATE | 4 DEPARTMENT | | 5 PAGE | | | 6 COMPLAINT NO |
|---|---|---|---|---|---|---|---|---|---|
| V ☐ D ☐ | | 0 | 121699 | DSP SIU South | | 1 OF 3 | | | 08-99-6419 |
| S ☐ RP ☐ | | | | | | | | | |

| 7 NAME (LAST - FIRST - MIDDLE) | 8 RACE, SEX, EO. | 9 D.O.B. | 10 RESID PHONE | 11 BUS PH |
|---|---|---|---|---|
| Weatherspoon, Ricardo | B/M/N/33 | 102666 | Unk | Unk |

| 12 ADDRESS | 13 RESIDENT ☐ UNK | 14 EMPLOYER / SCHOOL |
|---|---|---|
| LKA PO Box 222, CR 641, Ellendale, DE | ☐ FUL ☐ NON | Unknown |

| 8 LOCATION OF INCIDENT | 16 GRID | 17 SECT | 18 CTY | 19 NO PREMI | 20 TYPE PREMISES | 21 |
|---|---|---|---|---|---|---|
| New Hope Road, CR 213 2 miles S/O Ellendale | 138-124 | 41 | S | | Roadway | 13 |

| 22 REPORTED DAY  DATE  TIME | 23 OCCURRED DAY  DATE  TIME | DAY  DATE  TIME | 24 INVOLVEMENT |
|---|---|---|---|
| TH 121699 1922 | TH 121699 1922 | TO TH 121699 1920 | ☐ ☐ ☐ ALCOHOL DRUGS COMP |

| 25 CRIME OR INCIDENT  TITLE & SECTION | 26 UCR CLASS | 27 SUP CODE | 28 CRIM ACTIVIT |
|---|---|---|---|
| Delivery of Cocaine 16/4751/000a/C/F | | | |

| 29 4F-14 SENT  DATE | 30 G.B. | 31 POINT OF ENTRY | 32 NATURE OF INJURIES | 33 WEAPONS MEANS / ATTACK |
|---|---|---|---|---|
| YES ☐ NO ☒ | YES ☐ NO ☒ | N/A | N/A | N/A |

INDICATE RELATIONSHIP TO INVESTIGATION: W-1, W-2        NI NOT INTERVIEWED,        RP REPORTING        P PAREN

| CODE | 34 NAME (L., F.M.) | ADDRESS | PHONE |
|---|---|---|---|
| W-1 | Zoren | ▆▆▆▆▆ | ▆▆▆ |
| W-2 | Goode | ▆▆▆▆▆ | ▆▆▆ |

| 35 EVID | PERFORMED BY | TYPE |
|---|---|---|
| YES ☒ NO ☐ | Det. Wright 7705 | #13 Cocaine HCL & Freebase Reagent test kit positive reaction |

**36 METHOD OF OPERATION**                                                                          M.O.
On 121699, the above and below suspect sold an amount of crack cocaine to me in exchange for U.S. Currency on the above day date and times.

| 37-1 ☒ SUSPECT ☐ DEFENDANT (L., F.M.) | 37-2 TYPE ARREST | 37-3 V.O. | 37-4 RACE, SEX, EO. | 37-5 D.O.B. | 37-6 RESIDEN |
|---|---|---|---|---|---|
| Weatherspoon, Ricardo | ☐ ON ☐ SUMMON'D ☐ WARRANT | XX | B/M/N/33 | 102666 | ☐ ☐ FUL  NON |

| 37-7 ADDRESS | 37-8 DESCRIPTION | 37-9 ARMED |
|---|---|---|
| #15 | 5'6" 145 pounds, thin build, dark complexion, gotee | Unk |

| 38-1 ☒ SUSPECT ☐ DEFENDANT (L., | 38-2 TYPE ARREST | 38-3 V.O. | 38-4 RACE, SEX. EO. | 38-5 D.O.B. | 38-6 RESIDEN |
|---|---|---|---|---|---|
| Moore | ☐ ON ☐ SUMMON'D ☐ WARRANT | XX | B/M/N/27 | 081272 | ☐ ☐ FUL  NON |

| 38-7 ADDRESS | 38-8 DESCRIPTION | 38-9 ARMED |
|---|---|---|
| RP 57 Ellen | 5'10" 165 pounds, dark complexion, black hat camoflauge coat | Unk |

| 39 | | |
|---|---|---|
| N/A | N/A | |

| CODE | | PROPERTY TYPE | STOLEN - S. DAMAGED - D, RECOVERED - R, | TYPE | I.D. NUMBER | VA |
|---|---|---|---|---|---|---|
| | 40-1 | | | | | |
| | 40-2 | | | | | |
| | 40-3 | | | | | |
| | 40-4 | | | | | |
| | 40-5 | | | | | |

| 41 DRUG TYPE | 42 DRUG QUANT | 43 DRUG | 44 DATE RECOVERED | 45 VALUE DAMG | 46 VALUE REC | 47 VALUE STO |
|---|---|---|---|---|---|---|
| A | .25 | GM | N/A | N/A | N/A | N/A |

| CODE | 48 CONTINUATION OF ABOVE ITEMS | |
|---|---|---|
| 25 | Conspiracy 11/512/0001/G/F | |
| | For narrative see page two. | 135 DOMESTIC R |
| | | ☐ YES ☐ |

| 134 DOES VICT REQUEST NOTICE OF FUTURE PROCEEDINGS UPON ARREST? | 133 SUSPECTED BIAS / HATE | 49 DET NOTIFIED | 50 REFERRED TO | 51 SUPERVISOR AP |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☐ YES ☒ NO | N/A | N/A | |

| 52 REPORTING OFFICER  NO.  DIV | 53 STATUS | 54 EXCEPTIONAL CLEAR |
|---|---|---|
| Det. D. Wright  7705  SIU-South | ☐ UNFOUNDED  ☐ ARREST-JUV.  ☐ PENDING-ACTIVE  ☐ PEND-INACTIVE  ☐ ARREST-ADULT  ☐ SERVICE CLEAR | ☐ DEATH SUSPECT  ☐ NO V COO  ☐ PROSECUTION DECLINED  ☐ JUV CI  ☐ EXTRADITION DECLINED  ☐ ADMIN SA |

55 REPORTING PERSON'S SIGNATURE

| 56 SOLVABILITY FACTORS | ☐ WIT | ☐ MO | ☐ EVIDENCE | ☐ TRAC STOLEN | ☐ SUSP VEH ID'ED | 57 |



# DELAWARE STATE POLICE — EVIDENCE

COMPLAINT NO. 00-72-6620

VICTIM

SUBJECT _____ Dagdo - (Mahes-yaal

TYPE OF EVIDENCE ____ Issuure (Mack) (.15 glass)    DATE 10/16/19 TIME 2013

COLLECTED BY Det. D. Wright 7205

LOCATION New Hope Rd Tr. SL Ellendale

WITNESSES

REMARKS Evid- Evidence 2019 hrs    Su-Food Locker

TYPE OF CASE Det. Cocaine

INVEST. OFFICER DeT. Wright 7205

CHAIN OF CUSTODY

| TURNED OVER TO | DATE | TIME | LOCATION |
|---|---|---|---|
| RECEIVER'S SIGNATURE | | | |
| TURNED OVER TO | DATE | TIME | LOCATION |
| RECEIVER'S SIGNATURE | | | |



# CRIME REPORT

| V D | 2ND VICT'S | 3 REPORT DATE | 4 DEPARTMENT | | 5 PAGE | 6 COMPLAINT NO. |
|---|---|---|---|---|---|---|
| S RP | 0 | 121699 | DSP SIU South | | 1 OF 3 | 08-99-6420 |

**7 NAME (LAST - FIRST - MIDDLE):** Weatherspoon, Ricardo
**8 RACE, SEX, EO.** B/M/N/33  **9 D.O.B.** 102666  **10 RESID PHONE** Unk  **11 BUS PHONE** Unk

**12 ADDRESS:** LKA PO Box 222, CR 641, Ellendale, DE
**13 RESIDENT** [ ] UNK  **14 EMPLOYER / SCHOOL** Unknown

**15 LOCATION OF INCIDENT:** New Hope Road, CR 213 2 miles S/O Ellendale
**16 GRID** 138-124  **17 SEC'T** 41  **18 CITY** S  **19 SO PREM** **20 TYPE PREMISES** Roadway  **21 TYPE** 13

**22 REPORTED DAY DATE TIME** TII 121699 2013  **23 OCCURRED DAY DATE TIME** TII 121699 2013  **TO** TII 121699 22012
**24 INVOLVEMENT** ALCOHOL DRUGS COMPLETE

**25 CRIME OR INCIDENT TITLE & SECTION:** Delivery of Cocaine 16/4751/000a/C/F
**26 UCR CLASS** **27 SUP CODE** **28 CRIM ACTIVITY**

**29 4F-14 SENT** YES [ ] NO [x] **DATE** **30 G.B.** YES [ ] NO [x]  **31 POINT OF ENTRY** N/A  **32 NATURE OF INJURIES** N/A  **33 WEAPONS MEANS / ATTACK** N/A

INDICATE RELATIONSHIP TO INVESTIGATION: W-1, W-2    NI NOT INTERVIEWED,    RP REPORTING    P PARENT

| CODE | 34 NAME (L., F.M.) | ADDRESS | PHONE |
|---|---|---|---|
| W-1 | ▓▓▓ | ▓▓▓ | |
| W-2 | ▓▓▓ | ▓▓▓ | |

**35 EVID** YES [x] NO [ ]  **PERFORMED BY** Det. Wright 7705  **TYPE** #13 Cocaine HCL & Freebase Reagent test kit positive reaction

**36 METHOD OF OPERATION**
On 121699, the above and below suspect sold an amount of crack cocaine to me in exchange for U.S. Currency on the above day date and times.  **M.O. CLA**

**37-1** [x] SUSPECT [ ] DEFENDANT (L., F.M.): Weatherspoon, Ricardo
**37-2 TYPE ARREST** [ ] ON SUMMON'D [ ] WARRANT  **37-3 V.O.** XX  **37-4 RACE, SEX, EO.** B/M/N/33  **37-5 D.O.B.** 102666  **37-6 RESIDENT** FUL NON UNK
**37-7 ADDRESS** #15  **37-8 DESCRIPTION** 5'6" 145 pounds, thin build, dark complexion, gotee  **37-9 ARMED** Unk

**38-1** [x] SUSPECT [ ] DEFENDANT (L..): ▓▓▓
**38-2 TYPE ARREST** [ ] ON SUMMON'D [ ] WARRANT  **38-3 V.O.** XX  **38-4 RACE, SEX, EO.** B/M/N/27  **38-5 D.O.B.** 081272  **38-6 RESIDENT** FUL NON UNK
**38-7 ADDRESS** ▓▓▓  **38-8 DESCRIPTION** 5'10" 165 pounds, dark complexion, black hat camoflauge coat  **38-9 ARMED** Unk

**39 SUSP VEH REG# STATE** N/A  **YEAR** N/A  **MAKE** **MODEL** **BODY** **COLOR**

| CODE | PROPERTY TYPE | STOLEN - S, DAMAGED - D, RECOVERED - R. | TYPE | I.D. NUMBER | VALUE |
|---|---|---|---|---|---|
| 40-1 | | | | | |
| 40-2 | | | | | |
| 40-3 | | | | | |
| 40-4 | | | | | |
| 40-5 | | | | | |

**41 DRUG TYPE** A  **42 DRUG QUANT** .15  **43 DRUG** GM  **44 DATE RECOVERED** N/A  **45 VALUE DAMG** N/A  **46 VALUE REC** N/A  **47 VALUE STOLEN** N/A

| CODE | 48 CONTINUATION OF ABOVE ITEMS | |
|---|---|---|
| 25 | Conspiracy 11/512/0001/G/F | **135 DOMESTIC RELA** |
| | For narrative see page two. | YES [x] |

**134 DOES VICT REQUEST NOTICE OF FUTURE PROCEEDINGS UPON ARREST?** YES NO  **133 SUSPECTED BIAS / HATE** YES NO  **49 DET NOTIFIED** N/A  **50 REFERRED TO** N/A  **51 SUPERVISOR APPROV**

**52 REPORTING OFFICER** NO. Det. D. Wright 7705 SIU-South  **DIV** **63 STATUS** UNFOUNDED PENDING INACTIVE ARREST JUV DEATH SUSPECT NO/V COOPERA
**55 REPORTING PERSON'S SIGNATURE** ARREST ADULT SERVICE CLEAR PROSECUTION DECLINED GUARD CUSTO EXTRADITION DECLINED ADMIN SANCT **54 EXCEPTIONAL CLEAR**

**56 SOLVABILITY FACTORS** WIT M.O. EVIDENCE TRAC. STOLEN SUSP VEH ID'ED  **57**

Delaware State Police Special Investigations Unit
Criminal Investigation (Mosley, Weatherspoon)
Complaint Number 08-99-6420
Page 2 of 4


Interview Victim: N/A


Interview Suspect / Defendant:

Suspect #1: ███████████████
Suspect #2: Ricardo Weatherspoon

The above listed suspects have not been interviewed as of this date. The suspects will
be interviewed upon their arrest.


Interview Witnesses:

Witness #1: ███████████████████
Witness #2: ████████████

Witnesses #1 was also conducting an undercover purchase of crack cocaine at the same
time I was but Witness #1 was in another undercover vehicle. Witness #1 also purchased
a quantity of crack cocaine from the above listed suspects. Witness #2, provided back-up
support and surveillance during this complaint.


Investigative Action:

On 12-16-1999 at approximately 1830 hours, a past proven reliable cooperating
individual hereafter referred to as CI-1 told me that there were several subjects selling
crack cocaine in the area known as "The Hole" on CR 213 south of the town limits of
Ellendale. "The Hole" is also known as New Hope Road. The roadway is approximately
¼ of a mile long. CI-1 advised that a black male known as Ricardo Weatherspoon who is
approximately 5'-05", wearing a dark coat and a dark colored hat was standing with
another black male known as ███████████████ is approximately 6'-00" tall and
wearing a camouflage coat and a dark colored hat. Both of these subjects were selling
crack cocaine on New Hope road.

Delaware State Police Special Investigations Unit
Criminal Investigation (████ Weatherspoon)
Complaint Number 08-99-6420
Page 3 of 4


At approximately 2012 hours, I responded to the above location known as "The Hole". I drove my undercover vehicle onto New Hope Road. A black male wearing a dark jacket and a dark hat waived me down. Weatherspoon was standing next to another black male that was wearing a camouflage jacket and a dark hat. Both of the black males approached my undercover vehicle. I recognized the black male who was wearing the dark colored jacket as Ricardo Weatherspoon. I was familiar with Ricardo Weatherspoon because he was assigned to DSP-Troop #7 from SCI to detail the State Police Vehicles. I had seen him at DSP-Troop #7 on several occasions. The other black male who was wearing the camouflage jacket I was able to identify as ████████ I recognized ████████ from an arrest photograph that was obtained from DSP-Troop #4. I have previously made a purchase of crack cocaine from the above listed suspects 08-99-6419. After being waived down I stopped my undercover vehicle next to the above suspects. Suspect Weatherspoon asked me what was I looking for? I told him I wanted a "twenty" (referring to $20.00 worth of crack cocaine.) He told me to wait and he walked over to suspect ██████ I heard suspect Weatherspoon tell suspect ██████ that the "the white guy wants another twenty". Suspect ██████ reached into his right pants pocket and he removed a light colored container he then emptied something into his right hand and then he placed the object into the right hand of suspect Weatherspoon. Suspect Weatherspoon walked over to me and he placed a piece of suspected crack cocaine into my right hand. I examined the piece of crack cocaine and I asked suspect Weatherspoon if this piece is as good as the last? He responded by saying yeah. I then handed suspect Weatherspoon a twenty-dollar bill in exchange for the crack cocaine. After the transaction I maintained custody of the crack cocaine and I departed from the area. I later responded to the Special Investigations Unit office where I field tested, weighed and logged into evidence the crack cocaine purchased during this investigation. (For complete details see the evidence section of this report.)


**Examination of Crime Scene:**

The purchasing of the crack cocaine took place on New Hope Road. New Hope Road is on the east side of CR 213 approximately 2 miles south of the town limits of Ellendale.

#1st



#2nd





Delaware State Police Special Investigations Unit
Criminal Investigation (Mosley, Weatherspoon)
Complaint Number 08-99-6420
Page 4 of 4

### Evidence Section:

At approximately 2100 hours, I responded to the Special Investigations Unit. Upon my arrival I field tested, weighed and logged into the temporary evidence locker the crack cocaine purchased during this investigation. I field tested the crack cocaine using a #13 Cocaine HCL and Free Base Reagent Field Tester. I obtained positive results indicating a presence for cocaine. I then weighed the crack cocaine using an electronic digital scale that is maintained at the office for the weighing of controlled substances. I obtained and approximate weight of .15 grams. I then logged the crack cocaine into the temporary evidence locker.

For a list of the serial numbers for the United States Currency used during this investigation see the attached photocopy .

### Stolen Property: N/A

### Prosecution Action:

This case is pending active.



# DELAWARE STATE POLICE -- EVIDENCE

COMPLAINT NO. 0889/6/21

VICTIM N/A

SUBJECT WEATHERSBOON, RICARDO

TYPE OF EVIDENCE .669

COLLECTED BY DET Zolper 7870    DATE 12/14/08 TIME 2224 W/C

LOCATION N40 IGBE RD OR 213 1 MILE    5/0 EVIDENCE

WITNESSES N/A

REMARKS 4 PIECES

TYPE OF CASE Delivery Cocaine

INVEST. OFFICER DET IN Zolper 7870

| | CHAIN OF CUSTODY | | |
|---|---|---|---|
| TURNED OVER TO | DATE | TIME | LOCATION |
| RECEIVER'S SIGNATURE | | | |
| TURNED OVER TO | DATE | TIME | LOCATION |
| RECEIVER'S SIGNATURE | | | |

| 1 ID | 2 NO. VICT'S | 3 REPORT DATE | 4 DEPARTMENT | 5 PAGE | 6 COMPLAINT NO. |
|---|---|---|---|---|---|
| RP | 0 | 121699 | DSP SIU South | 1 OF 3 | 08-99-6421 |

| 7 NAME (LAST - FIRST - MIDDLE) | 8 RACE, SEX, EO. | 9 D.O.B. | 10 RESID PHONE | 11 BUS PHONE |
|---|---|---|---|---|
| Weatherspoon, Ricardo | B/M/N/33 | 102666 | Unk | Unk |

**12 ADDRESS** LKA PO Box 222, CR 641, Ellendale, DE

13 RESIDENT FUL / NON  14 EMPLOYER / SCHOOL Unknown

LOCATION OF INCIDENT: New Hope Road, CR 213, 2 miles S/O Ellendale

| 16 GRID | 17 SECT | 18 CTY | 19 NO PREM | 20 TYPE PREMISES | 21 LOC CODE |
|---|---|---|---|---|---|
| 138 124 | 41 | S | | Roadway | 13 |

22 REPORTED: TH 121699 2100 — 23 OCCURRED: TH 121699 1915 TO TH 121699 2100

24 INVOLVEMENT: ALCOHOL / DRUGS / COSMETICS

**25 CRIME OR INCIDENT TITLE & SECTION** Delivery of Cocaine 16/4751/000a/C/F

26 UCR CLASS | 27 SUP CODE | 28 CRIM ACTIVITY

29 4F-14 SENT YES / NO x | 30 G.B. YES / NO x | 31 POINT OF ENTRY N/A | 32 NATURE OF INJURIES N/A | 33 WEAPONS MEANS / ATTACK N/A

INDICATE RELATIONSHIP TO INVESTIGATION: W-1, W-2  NI NOT INTERVIEWED. RP REPORTING  P PARENT

| CODE | 34 NAME (L., F.M.) | ADDRESS | PHONE |
|---|---|---|---|
| W-1 | ▮ | ▮ | ▮ |
| W-2 | ▮ | ▮ | ▮ |

35 EVID YES x NO | PERFORMED BY Det. Zolper 7870 | TYPE #13 Cocaine HCL & Freebase. Reagent test kit positive reaction

**36 METHOD OF OPERATION** On 121699, the above and below suspect sold an amount of crack cocaine to me in exchange for U.S. Currency on the above day date and times.

37-1 SUSPECT / DEFENDANT (L., F.M.) Weatherspoon, Ricardo | 37-2 TYPE ARREST ON SUMMON'D WARRANT | 37-3 V.O. XX | 37-4 RACE, SEX, EO. B/M/N/33 | 37-5 D.O.B. 102666 | 37-6 RESIDENT FUL NON UNK

37-7 ADDRESS #15 | 37-8 DESCRIPTION 5'6" 145 pounds, thin build, dark complexion, gotee | 37-9 ARMED Unk

38-1 SUSPECT / DEFENDANT (L...) ▮ | 38-2 TYPE ARREST ON SUMMON'D WARRANT | 38-3 V.O. XX | 38-4 RACE, SEX, EO. B/M/N/27 | 38-5 D.O.B. 081272 | 38-6 RESIDENT FUL NON UNK

38-7 ADDRESS ▮ | 38-8 DESCRIPTION 5'10" 165 pounds, dark complexion, black hat camoflauge coat | 38-9 ARMED Unk

| CODE | PROPERTY TYPE | STOLEN - S, DAMAGED - D, RECOVERED - R | TYPE | I.D. NUMBER | VALUE |
|---|---|---|---|---|---|
| 40-1 | | | | | |
| 40-2 | | | | | |
| 40-3 | | | | | |
| 40-4 | | | | | |
| 40-5 | | | | | |

| 41 DRUG TYPE | 42 DRUG QUANT | 43 DRUG | 44 DATE RECOVERED | 45 VALUE DAMG | 46 VALUE REC | 47 VALUE STOLEN |
|---|---|---|---|---|---|---|
| A | .668 | GM | N/A | N/A | N/A | N/A |

CODE 25 | 48 CONTINUATION OF ABOVE ITEMS Conspiracy 11/512/0001/G/F

For narrative see page two.

135 DOMESTIC RELAT: YES / NO x

134. DOES VICT REQUEST NOTICE OF FUTURE PROCEEDINGS UPON ARREST? YES / NO x | 133 SUSPECTED BIAS / HATE YES / NO | 49 DET NOTIFIED N/A | 50 REFERRED TO N/A | 51 SUPERVISOR APPROV

52 REPORTING OFFICER Det. M. Zolper 7870 SIU South | 53 STATUS: UNFOUNDED / PENDING-ACTIVE / ARREST-ADULT | ARREST-JUV / PEND-INACTIVE / SERVICE COMPL | DEATH-SUSPECT / PROSECUTION DECLINED / EXTRADITION DECLINED | NO V-COOPERA / JUV NO CUSTODY / ADMIN SANCTIO

REPORTING PERSON'S SIGNATURE

56 SOLVABILITY FACTORS: SUSP. NAMED / SUSP LOCATED / EVIDENCE / TRAC STOLEN / SUSP VEHICLE ID / SUSP DESCRIBED / SUSP ID'D | OFFICE / FOLLOW-UP

**DELAWARE STATE POLICE**
**CONTINUATION**

**PAGE 2 OF 3**
**COMPLAINT 08-99-6421**

**Interview Victim**
N/A

**Interview Defendant**
N/A

**Interview Witness**

    W-1 is ▉▉▉▉▉▉▉▉ of the Delaware State Police Special Investigations Unit. ▉▉▉▉▉▉▉▉ assisted me with surveillance and back up during the investigation.

    W-2 is ▉▉▉▉▉▉▉ of the Delaware State Police Special Investigations Unit. ▉▉▉▉▉▉ assisted me with surveillance and back up during the investigation.

**Investigative Action**

    On 121699, at approximately 1830 hours, a past proven reliable cooperating individual hereafter referred to as CI-1, contacted me with drug information. CI-1 advised that there are several subjects selling crack cocaine in the area known as "The Hole" on CR 213 south of Ellendale. CI-1 advised that he/she could identify the subjects if undercover officers made purchases of crack cocaine in the area known as "The Hole." CI-1 advised there were two subjects selling in the roadway (New Hope Road) approximately ½ down from CR 213. New Hope Road or "The Hole" is a dead end dirt/gravel road. CI-1 advised Ricardo Weatherspoon, a black male, approximately 5'5" and 150 pounds wearing a dark coat and hat and ▉▉▉▉▉▉▉▉ a black male, approximately 6'0" wearing a camouflage coat and dark hat were selling together. I was advised that I was familiar with Weatherspoon.

    On 121699, at approximately 1918 hours, I arrived at the area known as "The Hole." I drove down New Hope Road and was waived down by a subject I immediately recognized as Ricardo Weatherspoon. I am familiar with him due to transporting him to and from S.C.I. and DSP Troop #7 while I was a uniformed Trooper. Weatherspoon was assigned to Troop #7 vehicle detailing as an inmate of S.C.I. Weatherspoon was wearing a dark coat and knit hat. There was a second subject with him wearing a camouflage coat, jeans and dark hat. This subject was a black male approximately 25 years old 6' to 6'2" and 180 pounds.

**DELAWARE STATE POLICE**
**CONTINUATION**

**PAGE 3 OF 3**
**COMPLAINT 08-99-6421**

Weatherspoon asked me "What did I need?' and I replied, "An eighty" referring to $80.00 worth of crack cocaine. Weatherspoon advised that he had me and signaled the other subject to pull out what appeared to be several pieces of crack cocaine and hand it to him. Weatherspoon then showed me the suspected crack cocaine and exchanged it for four twenty-dollar bills. I gave him the four twenty-dollar bills that I had previously recorded. The serial numbers are AC82843821E, AC55890456A, B45632375B and AC55890456A. I maintained custody of the suspected crack cocaine and left the area.

On 121699, at approximately 1925 hours, I contacted CI-1 and he advised Ricardo Weatherspoon took my money and handed me the crack cocaine. CI-1 advised the subject in the camouflage coat was ████████████ and he gave the crack cocaine to Ricardo Weatherspoon to give to me.

On 121699, at approximately 2118 hours, I placed the evidence into DSP SIU South temporary evidence. See Evidence section for more details.

**Examination of Crime Scene**

The crime scene is a dead end road named New Hope Road. It is on the east side of CR 213 approximately 2 miles south of Ellendale. This area is also known as "The Hole." Both suspects were standing approximately ½ of the way down on the road on the north side.

**Evidence**

On 121699, at approximately 2052 hours, I weighed the suspected crack cocaine on a digital scale and obtained a weight of .668 grams. ████████████ witnessed this. I then field-tested the suspected crack cocaine with a #13 Cocaine HCL & Freebase Reagent test kit and obtained a positive reaction. I then placed the crack cocaine into an evidence envelope, sealed it and placed it into DSP SIU South temporary evidence.

**Stolen Property**
N/A

**Prosecutive Action**

This case is pending active until the suspect is arrested and/or a search warrant is obtained.



# DELAWARE STATE POLICE
# E V I D E N C E

CONTROL NO. _____

COMPLAINT NO. ·08-99- 6423

VICTIM X+

SUBJECT WATHERSPOON. RICARDO

CASE TYPE DEL CRACK COCAINE

INVEST. OFF. DET DARREN SHORT

EVIDENCE +2.01 GRAMS CRACK
COCAINE

LOCATION NEW HOPE ROAD 2 MI
S/O ELLONDALE

COLLECTED BY DET SHORT 7887

DATE/TIME 121699 / 2011

DATE/TIME TO EVIDENCE 121699 / 2050

OFFICER SHORT    SUPV. OFF. _____

| FROM | DATE | TIME |
|------|------|------|
| TO | DATE | TIME |
| FROM | DATE | TIME |
| TO | DATE | TIME |
| FROM | DATE | TIME |
| TO | DATE | TIME |
| FROM | DATE | TIME |
| TO | DATE | TIME |
| FROM | DATE | TIME |
| TO | DATE | TIME |
| FROM | DATE | TIME |
| TO | DATE | TIME |

# CRIME REPORT

| V☐ D☐  S☒ RP☐ | 2 NO. VICT'S  0 | 3 REPORT DATE  121699 | 4 DEPARTMENT  DSP SIU-South | | 5 PAGE  1 OF 3 | 6 COMPLAINT NO.  08-99-6423 |
|---|---|---|---|---|---|---|

| 7 NAME (LAST - FIRST - MIDDLE)  Weatherspoon, Ricardo | 8 RACE, SEX, EO.  BMNH 33 | 9 D.O.B.  102666 | 10 RESID PHONE  N/A | 11 BUS PHONE  N/A |
|---|---|---|---|---|

| 12 ADDRESS  P.O. Box 222, Ellendale, De 19941 | 13 RESIDENT ☐ UNK ☒ FUL ☐ NON | 14 EMPLOYER / SCHOOL  Unemployed |
|---|---|---|

| LOCATION OF INCIDENT  New Hope Road approximately 2 miles south of Ellendale | 16 GRID  136-124 | 17 SECT  41 | 18 CTY  S | 19 NO PREM | 20 TYPE PREMISES  Roadway | 21 LOC CO:  18 |
|---|---|---|---|---|---|---|

| 22 REPORTED DAY DATE TIME  Thu 121699 2100 hours | 23 OCCURRED DAY DATE TIME  Thu 121699 2000 hours TO DAY DATE TIME  Thu 121699 2100 hours | 24 INVOLVEMENT ☐ ALCOHOL ☒ DRUGS ☐ COMPUTER |
|---|---|---|

| 25 CRIME OR INCIDENT TITLE & SECTION  Delivery of Crack Cocaine T16/ 4751 000a (F)(C) | 26 UCR CLASS | 27 SUP CODE | 28 CRIM ACTIVITY |
|---|---|---|---|

| 29 4F-14 SENT DATE  YES☐ NO☒ N/A | 30 G.B.  YES☐ NO☒ N/A | 31 POINT OF ENTRY  N/A | 32 NATURE OF INJURIES  N/A | 33 WEAPONS MEANS / ATTACK  N/A |
|---|---|---|---|---|

| INDICATE RELATIONSHIP TO INVESTIGATION: W-1, W-2 | NI NOT INTERVIEWED | RP REPORTING | P PARENT |
|---|---|---|---|

| CODE | 34 NAME (L., F.M.) | ADDRESS | PHONE |
|---|---|---|---|
| W-1 | ▓ | ▓ | |
| W-2 | ▓ | ▓ | |

| 35 EVID  YES☒ NO☐ | PERFORMED BY  Detective Short | TYPE  Field tested with a #13 Narcotest for Cocaine HCL and Free-base with positive reaction |
|---|---|---|

**36 METHOD OF OPERATION** M.O. CLA:
S1, S2, and S3 all conspired to sell an undercover police officer crack cocaine on the roadway on New Hope Road. S1 handed the crack cocaine to the police officer.

| 37-1 ☒ SUSPECT ☐ DEFENDANT (L., F.M.)  Weatherspoon, Ricardo | 37-2 TYPE ARREST ☐ ON ☐ SUMMON'D ☐ WARRANT | 37-3 V.O.  XX | 37-4 RACE, SEX, EO.  BMNH 33 | 37-5 D.O.B.  102666 | 37-6 RESIDENT ☒ FUL ☐ NON ☐ UNK |
|---|---|---|---|---|---|
| 37-7 ADDRESS  P.O. Box 222 Ellendale, De 19941 | 37-8 DESCRIPTION  5-06, 135 lbs, black clothing | | | | 37-9 ARMED  Unarmed |

| I ☒ SUSPECT ☐ DEFENDANT (L., | 38-2 TYPE ARREST ☐ ON ☐ SUMMON'D ☐ WARRANT | 38-3 V.O.  XX | 38-4 RACE, SEX, EO.  BMNH 27 | 38-5 D.O.B.  081272 | 38-6 RESIDENT ☒ FUL ☐ NON ☐ UNK |
|---|---|---|---|---|---|
| 38-7 ADDRESS ▓ | 38-8 DESCRIPTION  6-04, 200lbs, Camo colored jacket, dark pants | | | | 38-9 ARMED  Unarmed |

| 39 SUSP VEH REG# STATE  N/A | YEAR  N/A | MAKE | MODEL | BODY | COLOR(S) | IDENTIFYING CHARACTERISTICS |
|---|---|---|---|---|---|---|

| CODE | PROPERTY TYPE | STOLEN - S, DAMAGED - D, RECOVERED - R, | TYPE | I.D. NUMBER | VALUE |
|---|---|---|---|---|---|
| 40-1 | | | | | |
| 40-2 | | | | | |
| 40-3 | | | | | |
| 40-4 | | | | | |
| 40-5 | | | | | |

| 41 DRUG TYPE  A - Crack Cocaine | 42 DRUG QUANT  .201 | 43 DRUG  Grams | 44 DATE RECOVERED  N/A | 45 VALUE DAMG  N/A | 46 VALUE REC  N/A | 47 VALUE STOLEN  N/A |
|---|---|---|---|---|---|---|

| CODE | 48 CONTINUATION OF ABOVE ITEMS | |
|---|---|---|
| 25 | Conspiracy 2nd T11/ 512 0001 (F)(F) | 135 DOMESTIC RELA: |
| SUSP.3 | ▓ DEANE DAVU | |
| | See narrative for details | ☐ YES ☒ |

| 134. DOES VICT REQUEST NOTICE OF FUTURE PROCEEDINGS (IPOV ARREST)? ☒ YES ☐ NO | 133 SUSPECTED BIAS / HATE ☐ YES ☐ NO | 49 DET NOTIFIED  Detective Short | 50 REFERRED TO  SIU South | 51 SUPERVISOR APPROV |
|---|---|---|---|---|

| 56 SOLVABILITY FACTORS | WIT | MO. | EVIDENCE | TRAC. STOLEN | SUSP. VEH. ID'ED | 57 |
|---|---|---|---|---|---|---|

**Delaware State Police**
**Continuation**

Page 2 of 3
Complaint 08-99-6423

**Interview Victim**

N/A

**Interview Suspect**

*Muslif Mem*          *Diane Davis*

S1 Weatherspoon, Ricardo, S2 ██████████, and S3 ████████ were identified by a past proven cooperating individual. The Suspects were also identified through photographs obtained at DSP Troop 4. W-1 and W-2 were familiar with S1 Weatherspoon, S2 Mosely, and S3 Davis.

**Interview Witness**

W-1 ██████ and W-2 ██████ were in the area of the transaction. W-2 observed the suspects that sold me the crack cocaine. W-2 identified S1 Weatherspoon, S2 ██████, and S3 ████s who he knew from previous encounters. W-1 was contacted by a past proven cooperating individual, who advised that S1, S2, and S3 were selling crack cocaine on New Hope Road.

**Investigative Action**

On 121699 at approximately 2010 hours, I drove to New Hope Road to attempt to purchase crack cocaine from subjects selling on the street. W-1 and W-2 had already purchased crack cocaine from two subjects standing on the roadway and they had identified them as S1 Weatherspoon and S2 ██████ S1 Weatherspoon was dressed in all black and had facial hair. S2 ██████ was wearing a camouflage jacket and dark pants. S3 ██████ had also been seen in the area by W-2 and she was wearing a dark colored fleece and blue jeans.

I turned off of CR213 onto New Hope Road and drove east bound until I contacted two subjects walking west bound. I immediately identified the suspects as S1 Weatherspoon and S3 ██████ Both suspects walked up to my driver side door. S1 Weatherspoon asked me what I wanted and I told him that I wanted "forty," referring to forty dollars worth of crack cocaine. S1 Weatherspoon then told me to pull off onto the side of the roadway. S1 Weatherspoon then walked to the rear of my vehicle and contacted S2 ██████. I observed S2 ████y hand S1 Weatherspoon a quantity of suspected crack cocaine at the rear of my vehicle. S3 ████s then contacted me at my driver side door and asked me what I wanted. I told her that I wanted a "forty," and she advised me that she would make sure that S1 Weatherspoon gave me a good "forty." I then observed S3 ████ walk to the rear of my vehicle and contact S1 Weatherspoon and S2 ██████ The three suspects were using my brake lights to divide up the suspected crack cocaine. S2 Weatherspoon then walked to my driver side door and handed me two pieces and several crumbs of suspected crack cocaine. I then handed S2 Weatherspoon

**Delaware State Police**                                      **Page 3 of 3**
**Continuation**                                               **Complaint 08-99-6423**

two twenty dollar bills of U.S. currency serial numbers L01852294I and L41275349F.
S2 Weatherspoon then walked away from my vehicle and I exited the area.
     On 121799 at approximately 1200 hours, I viewed pictures of S1 Weatherspoon
and S3 ████ I immediately picked out S3 ████ and S1 Weatherspoon as being the
suspects that sold me crack cocaine.

## Examination of Crime Scene

     The transaction took place on New Hope Road approximately 2 miles south of
Ellendale. The transaction took place on the street approximately 100 yards east of
CR213.

## Evidence

     At approximately 2012 hours, S1 Weatherspoon sold me two pieces and several
crumbs of crack cocaine. I maintained custody of the evidence at that time. On 121799
at approximately 2027 hours, I field tested the crack cocaine with a #13 Narcotest for
Cocaine HCL and Free-base and received a positive reaction. At approximately 2032
hours, I weighed the suspected crack cocaine on a Mettler PM 200 digital scale and it was
found to weigh .201 grams. I placed the evidence in the DS SIU- South temporary
evidence locker on 121699 at approximately 2050 hours.

## Stolen Property

N/A

## Prosecutive Action

     The case is pending active at this time. Warrants will be obtained for S1
Weatherspoon, S2 ████ and S3 ████ at a later date.

Ex-4

Exhibit D

## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | Case Numbers |
| | ) | 0001004301 |
| vs. | ) | |
| | ) | |
| NICHOLAS A. MOSLEY, | ) | |
| | ) | |
| | ) | |
| STATE OF DELAWARE | ) | 0001003156 |
| | ) | |
| vs. | ) | |
| | ) | |
| RECARDO B. WEATHERSPOON, | ) | |
| | ) | |
| Defendants, | ) | January 20, 2000 |

- - - - -

BEFORE:

### HONORABLE ROSEMARY BETTS BEAUREGARD

- - - - -

APPEARANCES:

ADAM D. GELOF, Esquire
Deputy Attorney General,
on behalf of the State,

MARK E. STEINER, Esquire
Assistant Public Defender,
on behalf of the Defendants

### TRANSCRIPT OF PRELIMINARY HEARING

LINDA A. LAVENDER
Official Court Reporter

2

## INDEX

| STATE'S EVIDENCE | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Blaine Daisey.................. | 3 | 11 | -- | -- |

3

1
2
3                                               Court of Common Pleas
4                                               January 20, 2000

5    PRESENT: As noted.

6                               THE COURT: Call your first witness.

7                               MR. GELOF: Call Blain Daisey.

8                               OFFICER BLAINE DAISEY

9    having been first duly sworn, was examined and testified as follows:

10                              DIRECT EXAMINATION

11   BY MR. GELOF:

12                     Q.       Officer, where are you currently employed?

13                     A.       Delaware State Police. Assigned to

14   The Special Investigative Unit, have been for the last twelve years.

15                     Q.       And, are you aware of an investigation that

16   occurred on December 16, 1999 in the New Hope Road area of Ellendale?

17                     A.       That's correct.

18                     Q.       And, what are you aware of occurred as

19   part of that drug operation?

20                     A.       It was an ongoing investigation where

21   detectives responded to that area because of complaints of drug dealing. So, on

22   this particular night, December 16, 1999, they responded and made several

23   buys from that area.

24                     Q.       And, what was the exact area that they

                          LINDA A. LAVENDER
                          Official Court Reporter

1    made these buys from?

2                              A.         Use to be commonly referred to as the

3    Hole, which is now called New Hope Road right off County Road 213, Ellendale.

4                              Q.         Are you aware of the county and state?

5                              A.         Sussex County, State of Delaware.

6                              Q.         And, that is the location where all these

7    four drug deliveries were obtained?

8                              A.         That's correct.

9                              Q.         And, could you explain the circumstances

10   of how that occurred?

11                             A.         The officers, in this investigation,

12   responded to that area.  On one occasion the officer responded, they noticed a

13   couple black males in the area; one came over, asked him what he wanted.

14                             Q.         Do you see that person in the courtroom

15   today?

16                             A.         That's correct.

17                             Q.         And, could you identify him?

18                             A.         Mr. Weatherspoon.

19                             Q.         Closest to his attorney?

20                             A.         That's correct.

21                             Q.         And, what did Mr. Weatherspoon do?

22                             A.         Again, inquired, asked the undercover

1    officer what did he want.  This undercover officer was familiar with Mr.

2    Weatherspoon, simply because he used to work at Troop 7, Traffic Uniform.

3                        Q.        So, Mr. Weatherspoon's identification was

4    verified by prior employment at Troop 7?

5                        A.        By an undercover officer, yes, from his

6    being at Troop 7 doing detail and when he was serving time at SCI.

7                        Q.        And --

8                        MR. STEINER:  Your Honor, identification is

9    conceded as to both defendants.

10   BY MR. GELOF:

11                       Q.        How did the circumstances of the four

12   deliveries -- were they similar how they occurred?

13                       A.        Yeah, they were all similar how they

14   occurred.

15                       Q.        And, how was that?  How did the operation

16   work?

17                       A.        They drove up to New Hope Road about a

18   halfway down to New Hope Road, again contacting the black male, the one

19   black male, specifically Mr. Weatherspoon responding to each of the vehicles

20   that went pretty much in succession at that time.

21                       Q.        Okay.

22                       A.        They all were inquired as what they

23   wanted and they all responded whatever amount they wanted.  For example, the

1     one asked for $80.00 worth, meaning worth crack cocaine.  In that particular

2     case Mr. Weatherspoon responded back, told him he'd take care of him to the

3     other black male.

4                                    Q.      Mr. Mosley?

5                                    A.      Mr. Mosley who was later identified through

6     a cooperating individual to be Mr. Mosley.  What appeared to the officer, some

7     type of an exchange that took place, and moments later Mr. Weatherspoon

8     responding back with the amount of crack cocaine that was requested.

9                                    Q.      And, the first one did, in fact, $80.00 was it

10    transferred for a substance?

11                                   A.      That's correct.

12                                   Q.      And, was that substance tested?

13                                   A.      It was field tested by the officer and it

14    tested positive for cocaine and the approximate amount on that one was .668

15    grams.

16                                   Q.      And, did that same type of a transaction

17    occur three separate times?  Three separate additional times?

18                                   A.      Yes.  Pretty much the same way one

19    incident of they were actually behind the undercover vehicle using the break

20    light as a light source, what appeared to the officer, to be an exchange of crack

21    cocaine and again with Mr. Weatherspoon responding back to the officer that

22    requested the cocaine.

23                                   Q.      Okay.  We have the one $80.00 for crack

1   cocaine?

2                               A.      Yes.

3                               Q.      And, that was from an undercover officer

4   the purchase was made?

5                               A.      That's correct.

6                               Q.      Okay.  Was there enough, did an

7   undercover officer make another purchase?

8                               A.      Yes.  Again, after that particular buy, which

9   to be more specific, the time on that one was approximately 1915 hours, which is

10  like 7:15 p.m. in the evening that took place.  The next one --

11                              Q.      And, was that an exchange for cash for a

12  substance?

13                              A.      Again, yes.

14                              Q.      And, was that substance on the second

15  occasion tested?

16                              A.      That was tested and approximate time for

17  this particular exchange was approximately 1922 hours which is like 7:22, so

18  again the officer requested an amount of cocaine, and in this case it was $20.00

19  worth, and Mr. Weatherspoon again, contacted Mr. Mosley.  At that point Mr.

20  Weatherspoon responds back to the undercover officer giving him the suspected

21  crack cocaine, which later field tested positive for cocaine.

22                              Q.      And, did an undercover officer make

23  another purchase on that same date, that same location?

8

1          A.          That's correct. At approximately 8:00 that

2     same evening, through the same investigation, the same two individuals, Mr.

3     Weatherspoon and Mr. Mosley, the officer requested an amount. In this

4     particular case they also saw another subject, this is where in this case they

5     used the rear taillights for the exchange. They asked for $40.00 and again Mr.

6     Weatherspoon goes to get the $40.00, allegedly from Mr. Mosley, he comes

7     back, gives it to the undercover officer.

8          Q.          The undercover officer talks with Mr.

9     Weatherspoon, asked to purchase cocaine, Mr. Weatherspoon goes back to Mr.

10    Mosley and then returns?

11         A.          That's correct.

12         Q.          And, the requested amount was $40.00?

13         A.          Forty dollars.

14         Q.          And, was that amount of money given to

15    Mr. Weatherspoon?

16         A.          Could you give me a moment there for a

17    Second, please?

18         Q.          Okay.

19                     (PAUSE).

20         A.          I stand to be corrected on that one, again,

21    only because it's so many buys. There was a third person on this particular buy

22    that occurred at 2000 hours, 8:00 again, 8:00 p.m. in the evening. Apparently it

LINDA A. LAVENDER
Official Court Reporter

1   was a female subject, had contacted the undercover officer.  The undercover

2   officer requested the forty.

3                              Q.        Okay.

4                              A.        And, later made reference that

5   Weatherspoon gave the undercover the 40 at that point.  So, he made the

6   request through this third suspect and Mr. Weatherspoon actually gave the

7   undercover --

8                              Q.        Did Mr. Weatherspoon have an exchange

9   with Mr. Mosley in that transaction?

10                             A.        Yes.

11                             Q.        So, that one undercover officer asked to

12  purchase cocaine, female comes up, female then talks to Mr. Weatherspoon,

13  Weatherspoon goes back to Mosley, Weatherspoon returns with cocaine?

14                             A.        That's correct.

15                             Q.        Was that substance tested?

16                             A.        That substance was field tested.  It tested

17  positive for cocaine also and the amount on that one was .201 grams

18  approximately.

19                             Q.        And, then was there one additional delivery

20  on that same date, same location?

21                             A.        Yes.  And, that one occurred at

22  approximately 2013 hours which is like 8:13 p.m. in the evening.  Again $20.00

23  was requested and Mr. Weatherspoon, again contacted the undercover in this

1  particular one and again the undercover said $20.00, told him to wait a minute

2  and again he turned to Mr. Mosley. Apparently some type of an exchange took

3  place. In this one they observed Mr. Mosley reach into his right pants pocket

4  and remove a light colored container at this point where he emptied something

5  into his right hand and then placed it into the right hand of Mr. Weatherspoon

6  and then after that Mr. Weatherspoon responds back to the vehicle and hands

7  the suspected cocaine to the undercover.

8                              Q.        Based on your training and experience are

9  there any conclusions that you could draw about the manner, the way the

10 transactions occurred?

11                             A.        Yeah.

12                             Q.        Is this common?

13                             A.        Yeah, that's common and that's common

14 for certain drugs areas for them to work that way. Normally they would have

15 what they call a runner or that runner is usually a user so they can get a piece of

16 doing the -- what I would refer to as the dirty work, for the person that's actually

17 the seller.

18                             MR. GELOF: Nothing further, Your Honor.

19                             THE COURT: Mr. Steiner.

20                             (PAUSE).

21                             MR. STEINER: I'm sorry, Your Honor, just give me

22 one moment.

23                             (PAUSE).

LINDA A. LAVENDER
Official Court Reporter

1                              CROSS-EXAMINATION

2    BY MR. STEINER:

3                      Q.    Good afternoon, Officer.

4                      A.    Good afternoon.

5                      Q.    You weren't there that night; were you?

6                      A.    No, sir, I was not.

7                      Q.    Okay.  And, you've been referring to

8    something on the stand today, is that the police report you've been looking at?

9                      A.    That's correct.

10                     Q.    And, that was written by somebody else?

11                     A.    That's correct.

12                     Q.    Then you don't know whether that's true or

13   not?

14                     A.    I believe it to be true because I work with

15   these particular officers.

16                     Q.    I understand but you don't have any

17   personal knowledge of everything that's been relayed here today?

18                     A.    I was not present that particular night.

19                     Q.    What time of day was it?

20                     A.    Again, it was in the, what I would call the

21   early evening between 7:15 till 8:13.

22                     Q.    In your experience as a human being in

23   Ellendale at that time of day, is it dark out?

12

1                  A.      Yes.

2                  Q.      How far away was the undercover officer

3  from the people who were allegedly doing this drug activity?

4                  A.      In terms of distance I don't know other than

5  obviously Mr. Weatherspoon actually making contact with the undercover at the

6  driver's side window.

7                  Q.      And, apparently from the report you've

8  been referring to, whatever activity was occurring was being done with the

9  assistance of the lights on the car, is that what you said?

10                A.      In one particular case the officer made note

11  that they used the taillights for the illumination to see a certain exchange.

12                Q.      Was it the taillights or the brake lights?

13                A.      Brake lights.

14                Q.      That would indicate that is probably dark?

15                A.      Yes.  I'm familiar with the area.

16                Q.      Because they needed that light to help

17  them, whatever they were doing?

18                A.      Yes.

19                Q.      Is it possible that whatever happened that

20  night, whatever it was, was legal in nature?

21                A.      Was what again?

22                Q.      Whatever happened that night, you've got

13

1   two people there, allegedly.  Obviously the report even referring to, they think it

2   was a drug deal going down, but is it possible that they were there doing

3   something perfectly legal?

4                               A.       Well, I would disagree that.

5                               Q.       It's not possible that they could be doing

6   something legal?

7                               A.       What I see is four different instances where

8   the same two people were referred to, so, no, I don't think so.

9                               MR. STEINER:  Your Honor, if I may have a moment?

10                              THE COURT:  Uh-huh (affirmative response).

11                              MR. STEINER:  No further questions, thank you.

12                              THE COURT:  All right.  Mr. Gelof, anything further

13   for the officer?

14                              MR. GELOF:  No.

15                              THE COURT:  All right.  Officer, thank you for your

16   testimony.  You may stand down.

17                              THE WITNESS:  Thank you.

18                              (WHEREUPON, THE WITNESS STEPPED DOWN).

19                              THE COURT:  Any further witnesses for the State?

20                              MR. GELOF:  No, Your Honor.

21                              THE COURT:  Mr. Steiner, the State's rested, any

22   witnesses on behalf of the defense?

23                              MR. STEINER:  No, Your Honor.  Thank you.

LINDA A. LAVENDER
Official Court Reporter

14

1                      THE COURT:  All right.  I find probable cause on all

2    four deliveries and all four conspiracies.  I think there's probable cause for the

3    matter to go forward to the Grand Jury.

4

15

## CERTIFICATE OF REPORTER

I, Linda A. Lavender, Official Court Reporter of the Court of Common Pleas, State of Delaware, do hereby certify that the foregoing is an accurate transcript of the testimony adduced and proceedings had, as monitored and electronically recorded, in the Court of Common Pleas, in and for Sussex County in the case therein stated, as the same remains of record in the Prothonotary's Office, Sussex County, at Georgetown, Delaware.

WITNESS my hand this 27ᵗʰ day of *November,*

2002.

Certificate No. 172-PS
Expiration Date:  Permanent

LINDA A. LAVENDER
Official Court Reporter